## In re JOHNSON.

[Cite as In re Johnson, 166 Ohio App.3d 632, 2006-Ohio-1125.]

Court of Appeals of Ohio,
Fourth District, Washington County.

No. 05CA10.

Decided March 6, 2006.

Buell & Sipe Co. L.P.A., and Dennis L. Sipe, for appellant.

Joseph H. Brockwell, for appellee.

MCFARLAND, Judge.

{¶ 1} Appellant, Cassy Jarvis, appeals from the Juvenile Division of the Washington County Common Pleas Court's decision and judgment entry changing custody of her minor children, and placing them with their natural father, appellee, Randy Johnson. Appellant raises three assignments of error, contending that (1) the trial court erred when it made an evidentiary ruling regarding the admission of hearsay and opinion testimony, (2) the acts and omissions of counsel at the custody hearing deprived her of her right to counsel, and (3) the trial court erred when it changed custody of the minor children from her to appellee. In making its determination, the trial court applied the best-interest-of-the-child test, which is applicable in initial custody determinations, rather than the change-in-circumstances test, which is applicable in modification-of-custody determinations. This court sua sponte raised the issue of the appropriate legal standard used by the trial court in this custody matter. Thus, we ordered the parties to brief this issue and we have reviewed those briefs. Because we find that the case sub judice is more appropriately characterized as one for a modification of custody, rather than for an initial custody determination, we believe that the trial court reached its decision by applying the incorrect legal standard, and, therefore, we must reverse the judgment and remand the case to the lower court for additional findings of fact and conclusions of law in view of the appropriate legal standard.

{¶ 2} Appellant, Cassy Jarvis, and appellee, Randy Johnson, are the parents of four-year-old Kassidy Jarvis and five-year-old Alexandria Johnson. Both children were born out of wedlock. Appellant and appellee lived together for only a short period of time, beginning when Alexandria was two months old and ending before Kassidy's birth. There was, however, at some point, a determination of paternity regarding the children, and appellee's duty to pay child support commenced on April 6, 2000. The record reveals that at the time of the hearing, June 30, 2004, appellee was $6,257.43 behind in child-support payments. Appellee testified that he chose not to pursue custody or visitation at that time because he "did not want to take the children from their mother." He explained that "he felt that they are two little girls, at that time, that they deserved their mom to help raise them to become women."

{¶ 3} Appellee, some time around Christmas 2004, became suspicious that the children were being physically abused and reported his concerns to the Children's Services Board ("CSB") of Parkersburg, West Virginia. Soon after this report, appellant and the children, along with appellant's live-in boyfriend with whom she shared two younger children, moved to Ohio. As a result, appellee again reported his concerns to the CSB in Ohio. Subsequently, based upon statements made by

Kassidy, appellee again contacted CSB and alleged that he believed that the children were being sexually abused by appellant's boyfriend. As a result of these allegations and because of appellant's denial that any abuse had occurred, as well as her refusal to remove the children from the household she shared with her boyfriend, appellee requested and was granted temporary emergency custody of the children via ex parte order. Appellant was granted supervised visitation.

{¶ 4} A hearing was held and, based upon the court's findings of fact and conclusions of law, appellee was designated the residential parent with supervised visitation to continue with appellant. It is from this decision that appellant brings her appeal, assigning the following errors for our review:

{¶ 5} "I. The trial court erred when it made Evidentiary ruling [sic] regarding the admission of Hearsay and opinion testimony.

{¶ 6} "II. The acts and omissions of counsel at the custody hearing deprived Ms. Jarvis of her right to counsel.

{¶ 7} "III. The trial court erred when it changed custody of the minor children from Ms. Jarvis to Randy Johnson."

 {¶ 8} A trial court's decision to grant a modification of custody is reviewed with the utmost deference. See, e.g., *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 674 N.E.2d 1159; *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. We can sustain a challenge to a trial court's decision to modify custody only upon a finding that the trial court committed an abuse of discretion. *Davis*, supra.

 {¶ 9} An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 498, 506, 589 N.E.2d 24; *Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622. When applying an abuse-of-discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181. Above all, a reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections and use his observations in weighing the credibility of the proffered testimony. *Jane Doe 1*, supra, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. Deferential review in a child-custody case is crucial since there may be much evident in the parties' demeanor and attitude that does not translate to the record well. *Davis*, supra.

■ {¶ 10} Before we determine whether the trial court abused its discretion with regard to various evidentiary rulings and the ultimate change in custody, we must first address the fact that the lower court applied the best-interest-of-the-child test, rather than the change-of-circumstances test, in making its determination that the children should reside with their father instead of their mother, with whom they had resided since birth. Thus, the court treated the situation as an initial custody determination rather than as a modification of custody.

{¶ 11} R.C. 3109.04(B)(1) governs initial custody awards and requires trial courts making initial custody awards to apply a "best interest of the child test." *In re Shepherd* (Mar. 19, 1999), Scioto App. No. 98 CA 2586, 1999 WL 163422. R.C. 3109.04(B)(1) provides:

{¶ 12} "When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children."

{¶ 13} R.C. 3109.04(E)(1)(a) governs modifications of prior custody decrees and prohibits modification unless the trial court finds that a change has occurred in the circumstances of the child or his residential parent and finds that modification is necessary to serve the best interest of the child. R.C. 3109.04(E)(1)(a) provides:

{¶ 14} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

{¶ 15} (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of the residential parent.

{¶ 16} (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

{¶ 17} (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

{¶ 18} Here, a review of the trial court's decision and judgment entry suggests that the trial court approached the case as if it were an initial custody determination. While the trial court refers to its application of the best-interest-of-the-child test, there is no mention of the change-of-circumstances analysis that is required for custody modifications. The trial court likely treated the case as an initial custody determination in light of the fact that there were no orders *expressly* granting custody to either parent. The parents were never married, and appellant had exclusive custody of the children since their births, up until the time the court placed them in the custody of appellee.

{¶ 19} We have previously discussed when a proceeding should be characterized as an initial custody determination versus a modification of custody. See *In re Webster* (Sept. 14, 1993), Athens App. No. 92CA1559, 1993 WL 373784, and *In re Shepherd,* supra. In *Shepherd,* we noted that " '[s]everal Ohio appellate courts * * * have held that when paternity has been adjudicated with a corresponding child support order, a father moving the court for custody will need to meet the change of circumstances standard of R.C. 3109.04(E)(1) for custody modification, because a support order in a paternity motion "impliedly and necessarily" recognizes a mother's legal custody of a child who lives with her. *Ballinger v. Bales* (July 25, 1994), Butler App. No. CA–93–06–109, 1994 WL 386108.' " *Shepherd,* supra, quoting *In re Wells* (1995), 108 Ohio App.3d 41, 44, 669 N.E.2d 887.

{¶ 20} Here, although there was no express custody or visitation order, there was an implied order by virtue of the fact that appellee had been ordered to pay child support, obviously as a result of a determination of paternity. Based upon these facts, the trial court should have applied the change-of-circumstances test, rather than the best-interest-of-the-child test.

{¶ 21} However, we also acknowledged in *Shepherd* that the *Wells* court recognized two exceptions to this rule by holding that "despite the fact that a prior child support order exists, the trial court should apply the R.C. 3109.04(B)(1) best interest [of the child] test rather than the R.C. 3109.04(E)(1)(a) change of circumstances test: (1) if little time elapsed between the child support order and the father's motion for custody; or (2) if there was a relationship between the father and the child prior to the child support order." Id.

{¶ 22} In the case sub judice, Alexandria was born on February 12, 1999, and Kassidy was born on April 12, 2000. Appellee's duty to pay child support commenced on April 6, 2000. At the time of the hearing, appellee was behind some $6,000 in his child-support payments. Because a significant amount of time elapsed between the child-support order and the appellant's motion for custody, we find that the present scenario does not fall within exception number one above.

{¶ 23} Likewise, we find exception number two does not apply to the facts presently before the court. At the time child support was ordered to be paid, appellee testified that he did not even know that Alexandria was his daughter until she was two months old, at which point he reunited with appellant and a second child was conceived. However, appellant and appellee parted ways once again and appellee testified that he never talked to appellant again until the day Kassidy was born. Based upon these facts, it appears that appellant had not developed a relationship with either of the children, certainly not Kassidy, before the time of the child support order.

{¶ 24} In light of the foregoing, we believe that the trial court applied the incorrect test in determining the custody of these minor children. Therefore, we will not address the merits of appellant's assignments of error as the trial court's decision, on its face, was decided according to an incorrect legal standard. Accordingly, we reverse the judgment and remand this matter for further findings of fact and conclusions law and application of the correct legal standard in the court below.

Judgment accordingly.

HARSHA, P.J., concurs.

KLINE, J., concurs in judgment only.