TABLER, Appellee,

v.

MYERS et al., Appellant.

[Cite as *Tabler v. Myers,* 173 Ohio App.3d 657, 2007-Ohio-6219.]

Court of Appeals of Ohio,
Seventh District, Noble County.

No. 07–NO–339.

Decided Nov. 14, 2007.

Anita L. Newhart, for appellee.

Mark Morrison, for appellant.

DONOFRIO, Judge.

{¶ 1} Defendant-appellant, Julie Myers, appeals from a Noble County Common Pleas Court, Juvenile Division, judgment permitting third-party defendant-appellee, Barbara Tabler, to continue as the legal custodian of one of appellant's two

daughters, and appellant to continue as the residential parent and legal custodian of her other daughter.

{¶ 2} Appellant and plaintiff, Brian Tabler, have two children together, Victoria (d.o.b. July 22, 1999) and Alexandria (d.o.b. July 10, 2003). Appellant and Tabler have never been married to each other. Appellant and Tabler resided together for some time but never married. Both appellant and Tabler are now married to other people. Appellee is Tabler's mother and paternal grandmother of the minor children.

{¶ 3} Before making their way to the Noble County Common Pleas Court, appellant, appellee, and Tabler were parties to numerous court proceedings stemming from requests for civil protection orders in the Washington County Common Pleas Court beginning in 2001, before Alexandria was born. As a result of those proceedings, a civil protection order ("CPO") was issued for appellant and Tabler against each other. Furthermore, the court designated appellee as Victoria's temporary legal custodian. The court also put on a child support order. Meanwhile, on July 10, 2003, Alexandria was born. After Alexandria's birth, appellant and Tabler separated. Alexandria has lived with appellant continuously since her birth. Her custody was never at issue in Washington County. Prior to the proceedings in Noble County, there have been no orders regarding Alexandria's custody.

{¶ 4} On March 10, 2006, Tabler filed a complaint to establish an allocation of parental rights, companionship, and visitation, and a name change for Alexandria in Noble County. At this time, Victoria was still residing with appellee, her legal custodian. Appellant filed a counterclaim adding appellee as a third-party defendant and requesting that she be designated residential parent of both Victoria and Alexandria. Tabler subsequently filed an amended complaint asking that he be named as the residential parent of both Victoria and Alexandria. Next, appellee filed a motion to be named Victoria's legal custodian.

{¶ 5} The court held a hearing on the complaint and counterclaims on November 20, 2006. In addition to testimony, the court had before it a copy of the record of proceedings from Washington County Common Pleas Court. Using the change-in-circumstances standard, the court determined that no modification was necessary to serve the best interest of the children. The court used the change-in-circumstances and best-interest-of-the-child tests because it determined that the Washington County Court's judgment naming appellee as Victoria's legal custodian was an initial custody determination. Thus, the court ordered that appellee was to continue as Victoria's legal custodian and appellant was to continue as Alexandria's residential parent and legal custodian.

{¶ 6} On January 12, 2007, appellant filed a timely notice of appeal. Tabler has not appealed from the trial court's judgment nor has he filed a brief in this matter.

{¶ 7} Appellant raises two assignments of error, the first of which states:

{¶ 8} "The trial court committed prejudicial error by applying a change of circumstances standard in a child custody action based upon a previous civil protection [sic.] issued by a foreign court that had terminated by operation of law under the provisions of R.C. 3113.31."

{¶ 9} Appellant argues that the CPO terminated five years after it was issued by operation of statute, which was on September 18, 2006. Therefore, she argues, the court should have treated this case as an initial custody determination as to both children. Appellant contends that the court incorrectly applied the change-in-circumstances test because it failed to treat this matter as one of initial custody. She contends the trial court should have applied the parental-suitability test instead.

{¶ 10} We must begin our analysis with an examination of R.C. 3113.31 and the facts as they occurred in the Washington County court. It was under this statute that the Washington County court issued the CPO to appellant and Tabler. All matters in Washington County stemmed from that CPO. The court initially granted appellee temporary custody of Victoria. Then, in an agreed entry, the court granted appellee temporary custody of Victoria for one year from May 2002.

{¶ 11} When the one year was up, appellee filed a motion to remain Victoria's legal custodian. Appellant and Tabler opposed the motion and sought to have Victoria returned to their custody. The court held a hearing on the motion. It determined that extreme circumstances, including excessive alcohol abuse and extreme violence, were the initial reasons for granting appellee temporary custody of Victoria. The court found that appellant and Tabler had not made any substantial changes regarding the reason for appellee's temporary custody of Victoria. The court found that appellant and Tabler did not demonstrate a substantial change in circumstances and that it was not in Victoria's best interest to modify her legal custodian. Thus, the court ordered that appellee was to continue as Victoria's legal custodian.

{¶ 12} R.C. 3113.31 governs domestic-violence hearings and CPOs granted for that purpose. R.C. 3113.31(E)(1)(d), the section under which the Washington County court initially granted the CPO, permits the court to temporarily allocate parental rights and responsibilities if no other court has determined, or is determining, the allocation of parental rights and responsibilities for the minor children. R.C. 3113.31(E)(3)(a) provides that any protection order issued or

consent agreement approved shall be valid until a date certain, but not later than five years from the date of its issuance or approval unless modified or terminated as provided by the statute. Furthermore, R.C. 3113.31(E)(3)(b) states:

{¶ 13} "Subject to the limitation on the duration of an order or agreement * * *, any order under division (E)(1)(d) of this section shall terminate on the date that a court in an action for divorce, dissolution of marriage, or legal separation brought by the petitioner or respondent issues an order allocating parental rights and responsibilities for the care of children *or on the date that a juvenile court in an action brought by the petitioner or respondent issues an order awarding legal custody of minor children.*" (Emphasis added.)

{¶ 14} Per the statute's wording, a CPO is not regarded as a custody proceeding. Rather, a CPO that deals with the custody of a minor child is only a temporary order that lasts until the issue is litigated in a domestic relations or juvenile court.

{¶ 15} According to the statute's wording, a CPO is not regarded as a custody proceeding. Rather, a CPO that deals with the custody of a minor child is only a temporary order that lasts until the issue is litigated in a domestic relations or juvenile court.

{¶ 16} But in this case, the Noble County Court treated the matter as a change-of-custody case and not as an initial custody determination. The court noted that a child-support order was put in place for Victoria in 2005 and modified in 2006. The court relied on *In re Johnson,* 166 Ohio App.3d 632, 2006-Ohio-1125, 852 N.E.2d 1223, and applied the change-in-circumstances test, reasoning that an administrative support action was an initial custody proceeding.

{¶ 17} In *Johnson,* the father filed a motion for custody of his two children, who resided with their mother. Paternity had previously been established and a support order was in place. However, no formal motion for custody had been filed until this time. The trial court granted custody to the father, treating the matter as an initial custody determination and applying the best-interest-of-the-children test, which is used in an initial custody determination between two parents. The appellate court reversed, holding that although there had been no *express* custody order, there was an *implied* custody order by virtue of the fact that there had been a finding of paternity and order of child support. Id. at ¶ 20. Therefore, the appeals court held that the trial court should have treated the case as one of custody modification and applied the change-of-circumstances test. Id.

{¶ 18} This case is distinguishable, however. In *Johnson,* the court was faced with an action between two parents. Here the dispute is between a parent and a nonparent. In this case, unlike in *Johnson,* a court must have made a finding

that the parent is unsuitable before awarding permanent custody to the nonparent.

{¶ 19} The seminal case in Ohio dealing with custody between a parent and a nonparent is *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971. The *Hockstok* case originated when the mother, Jennifer Gorslene, filed a complaint in the juvenile court to establish her child's paternity. Paternity was established and the court designated Gorslene as the child's residential parent. Soon thereafter, Gorslene's father and stepmother, the Hockstoks, filed a motion to be made parties to the action so they could assert custodial rights to the child. The court granted the Hockstoks' motion and found that it was in the child's best interest to grant temporary custody to them. Gorslene and the Hockstoks subsequently entered into an agreement whereby the Hockstoks assumed temporary custody of the child for six months to give Gorslene time to create a stable living environment for her child. When the six months expired, the parties agreed to extend the period of temporary custody for another six months. Before the expiration of the six-month period, Gorslene filed a motion to terminate the Hockstoks' temporary custody and regain custody of her child. The Hockstoks then filed a motion requesting legal custody of the child. The matter proceeded to a hearing. The court adopted the magistrate's decision, applying the best-interest test and granting the Hockstoks legal custody of the child. Gorslene failed to appeal this decision.

{¶ 20} Ten months later, Gorslene filed a motion for the reallocation of parental rights. The magistrate again applied the best-interest test in recommending that the Hockstoks retain custody. Gorslene objected, arguing that the magistrate was first required to determine whether she was a suitable parent. The trial court, in adopting the magistrate's decision, denied Gorslene's motion. Gorslene appealed.

{¶ 21} The Ohio Supreme Court held that in a child custody case arising from a parentage action between a parent and a nonparent, the trial court must make a parental-unsuitability determination on the record before awarding the child's legal custody to a nonparent. Id. at the syllabus. See, also, *In re Perales* (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047, syllabus. On appeal, the Hockstoks argued that Gorslene failed to appeal the original grant of legal custody to them, thereby constructively forfeiting her right to custody, and therefore the court did not err in applying the best-interest test. The court disagreed, finding that no evidence existed that Gorslene ever agreed to give the Hockstoks legal custody of her child.

{¶ 22} The present case shares many similarities with *Hockstok*. In both cases, the mother agreed to grant temporary custody of the child to the grandparents for a certain period of time with the possibility of an extension once

that time expired. And in both cases, when the grandparents sought to keep legal custody of the child, the mother objected and moved to have custody returned to her. Furthermore, when the court granted custody to the grandparents, in both cases, the mother did not appeal from the decision. Additionally, as in the case at bar, the mother in *Hockstok* had an order to pay child support to the grandparents while the grandparents had temporary custody of the child. The court did not find this fact significant, as it made no mention of it in its analysis.

{¶ 23} The *Hockstok* court held that a parent is entitled to have a court determine whether she is a suitable parent before granting legal custody of her child to a nonparent. In the present case, no court has ever done so. Thus, the trial court must determine whether appellant is a suitable parent.[1] If the court determines that appellant is a suitable parent, it must grant Victoria's custody to her.

{¶ 24} Moreover, the fact that the temporary award of custody to appellee arose out of a CPO action further supports this conclusion. In *Boling v. Valecko* (Feb. 6, 2002), 9th Dist. No. 20464, 2002 WL 185182, the court named the father as the residential parent of the parties' minor child. The mother appealed and contended that since she had obtained temporary custody of her son by a prior CPO, any subsequent custody proceeding should be treated as a modification rather than an initial determination. However, the appellate court affirmed the trial court's decision to regard the proceeding as an initial custody determination subject to a best-interest standard. The court reasoned that the prior custody order was merely a temporary order. The court stated:

{¶ 25} "Although there was a prior order of custody in this case, it was merely a temporary order. 'When a court makes its permanent custody order, differences between it and the temporary order are not modifications pursuant to R.C. 3109.04[.]' *Rowles v. Rowles* (Apr. 29, 1988), Lake App. No. 12–064[, 1988 WL 41553], unreported. It is only after the final judgment allocating parental rights and responsibilities that the court must comply with the statutory requirements for modification. See id. See, also, *Spence v. Spence* (1981), 2 Ohio App.3d 280[, 2 OBR 310], 441 N.E.2d 822." Id.

{¶ 26} Thus, because appellee's award of custody arose from a CPO, it was merely a temporary order and was not an initial determination of custody.

{¶ 27} Appellee relies upon the decisions *In re Brayden James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, and *Wyss v. Wyss* (1982), 3 Ohio App.3d

---

1. Presumably, the court has already implicitly determined that appellant is a suitable parent because it granted custody of Alexandria to appellant.

412, 3 OBR 479, 445 N.E.2d 1153.  However, those cases are distinguishable.  In *James,* the court dealt with a situation in which the child had been adjudicated abused and dependent.  113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, at ¶ 23.  And *Wyss* dealt with a change in custody between two parents.  In this case, we are neither dealing with an abused and dependent child nor are we dealing with a custody modification between two parents.  Instead, we are faced with a custody proceeding between a parent and grandparent where the parent agreed to give temporary custody to the grandparent and a parental-suitability determination was never made.

{¶ 28} In this case, the Washington County Court of Common Pleas issued a CPO.  The CPO was modified by that court when it issued an agreed entry.  This entry allocating temporary custody to appellee was in effect for one year.  When the entry expired, appellee moved to continue with custody.  The Washington County court held a hearing and granted the motion.  However, at no time prior to this proceeding did any court determine custody of Victoria or make a finding that appellant was an unsuitable parent.  Therefore, at the onset of the present proceedings in Noble County, the CPO granting appellee temporary custody expired.  Hence, the initial custody proceeding regarding Victoria was this case in Noble County and not the proceedings surrounding the CPO in Washington County.  Thus, the trial court should have applied the parental-suitability test in determining who should be granted custody of Victoria.  Accordingly, appellant's first assignment of error has merit.

{¶ 29} Appellant's second assignment of error states:

{¶ 30} "The trial court decision is against the manifest weight of the evidence presented and contrary to law."

{¶ 31} Given our resolution of appellant's first assignment of error, this assignment of error is moot.

{¶ 32} For the reasons stated above, the trial court's judgment is hereby reversed as it pertains to Victoria's custody only.  The matter is remanded for proceedings pursuant to law and consistent with this opinion.

Judgment reversed in part
and cause remanded.

VUKOVICH and WAITE, JJ., concur.