[Cite as *Tabler v. Snider*, 2010-Ohio-1545.]

STATE OF OHIO, NOBLE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| BRIAN TABLER | ) | CASE NO. 08 NO 357 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| JULIE MYERS SNIDER | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the Court of Common
                             Pleas of Noble County, Ohio
                             Case No. 206-4001

JUDGMENT:                    Affirmed.

APPEARANCES:

For Plaintiff-Appellee:              Atty. Jinx Beachler
                                     Beachler & Beachler
                                     8299 McGur Road
                                     Stewart, Ohio  45778

For Defendant-Appellant:             Atty. Mark Morrison
                                     Morrison Law Offices
                                     117 N. Main Street
                                     Woodsfield, Ohio  43793

For Third-Party Defendant-Appellee:  Atty. Anita L. Newhart
                                     103 Hillside Way
                                     Marietta, Ohio  45750-9541

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated:  March 30, 2010

WAITE, J.

**{¶1}** Appellant, Julie Myers Snider, appeals the decision of the Noble County Court of Common Pleas, Juvenile Division, to grant custody of her daughter, Victoria Marie Myers (d.o.b. July 22, 1999), to Appellee, Barbara Tabler, the child's paternal grandmother. Appellant contends that the trial court's conclusion that she is an unsuitable parent is not supported by credible evidence and that the trial court erred when it conducted a second evidentiary hearing in this case. For the following reasons, both of Appellant's assignments of error are overruled and the judgment of the trial court is affirmed.

**{¶2}** Appellant and Victoria's father, Brian Tabler (Tabler"), were never married. Appellee was granted temporary custody of Victoria pursuant to a civil protection order ("CPO") issued by the Washington County Common Pleas Court in 2001. Pursuant to the same CPO, Appellant and Tabler were each ordered to stay away from the other due to repeated violent episodes ignited by Tabler's alcohol abuse, which were a hallmark of their relationship. The restraining order was vacated in 2002, however the custody order was continued for a year pursuant to an agreed judgment entry. In 2003, the custody order was extended to the life of the CPO, which expired in 2006.

**{¶3}** Appellant and Tabler had a second child, Alexandria Anne Myers (d.o.b. 7/10/03), however, Alexandria's custody had never been determined by an Ohio court until this case. She has always lived with Appellant. The couple broke up

after Alexandria's birth and have since married other people, and each of them has had another child with their respective spouse.

{¶4}   Appellant's husband died of cancer in 2007.  Appellant cared for her husband at home until she filed for a CPO against him shortly before his death.  Appellant alleged that he had become abusive, however, he was placed in a nursing home facility shortly after she filed for the CPO.

{¶5}   The relationship between Appellant and the Tablers was strained during the time that Appellee had custody of Victoria due to some typical and some atypical interpersonal and communication problems.  For instance, in the past, Appellant has accused Appellee's husband, Victoria's paternal grandfather, Chester Tabler, of molesting Victoria, however, no formal charges were ever filed.  (2/8/08 Tr., p. 114.)  At some point, Tabler's wife, Amy, assumed responsibility for delivering and collecting Alexandria for visitation because she considered Appellant's behavior toward Tabler to be inappropriate.  (2/8/08 Tr., p. 229.)  During the relevant time frame, Appellant refused to provide her address to the Tablers, so the parties exchanged the girls at a mutually convenient location.  (2/8/08 Tr., p. 107.)  In order to contact Appellant, Appellee had to leave messages with the girlfriend of Appellant's father, Shelby Hughes.  (11/20/06 Tr., p. 99.)  Appellant testified that her husband did not want the Tablers to have their home phone number because they harassed her.

{¶6}   On March 10, 2006, Tabler filed a complaint for the allocation of parental rights, companionship, and visitation, as well as a name change with respect to Alexandria in Noble County.  Appellant filed a counterclaim adding Appellee as a

third-party defendant and requesting that she be designated residential parent of both Victoria and Alexandria. Tabler subsequently filed an amended complaint asking that he be named the residential parent of both Victoria and Alexandria. Then, Appellee filed a motion to be named Victoria's legal custodian.

{¶7} The trial court conducted a hearing on the complaint and counterclaims on November 20, 2006. Using the change in circumstances standard, the trial court determined that no modification was necessary to serve the best interest of the children. The trial court applied the change in circumstances/best interest of the child standard because it reasoned that the Washington County Court's CPO naming Appellee as Victoria's legal custodian, and an administrative action regarding support for Alexandria in 2005, were initial custody determinations.

{¶8} On appeal, the sole issue before us was Victoria's custody determination. We concluded that the CPO did not constitute an initial determination of custody, and, as a consequence, the trial court applied an incorrect standard in determining this matter. *Tabler v. Myers*, 173 Ohio App.3d 657, 2007-Ohio-6219, 880 N.E.2d 103. Specifically, we held that a parent is entitled to have a court determine whether he or she is a suitable parent before legal custody of the child may be granted to a nonparent. Id., ¶23, citing *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971. The matter was then remanded to the trial court for a determination as to whether Appellant was a suitable parent for Victoria. We observed in dicta that, "[p]resumably, the [trial] court has already implicitly determined that appellant is a suitable parent because it granted custody of Alexandria to appellant." *Tabler* at ¶23, fn.1.

{¶9} On remand, the trial court conducted a second evidentiary hearing. Appellant's trial counsel objected to the second hearing, arguing that the remand order required that the trial court rely exclusively on the original record. In response to the objection, the trial court stated:

{¶10} "The Court took the position initially that because of actions that happened down in Washington County that necessarily there was a decision made by that court on the issue of custody. Okay? The Court of Appeals didn't see it that way and I think since this court treated it as a change of circumstances a modification of custody [sic], if you will, then necessarily the Court would not have considered anything that happened prior to the time that the Washington County Court dealt with this matter. Now, the matter has been remanded back to this Court and this court has been directed to use a best interest test, treat this as an initial determination of custody and since there has been no, no Court decisions prior to today with respect to the division of parental rights and responsibilities as they deal with Victoria I think everything from the date of birth of Victoria forward is going to be available. And, since none of that information from the date of birth up until Washington County Court [sic] dealt with it was a matter before the Court at the time of the initial hearing here in Noble County I think in order to comply with the requirements out of the Court of Appeals for this court to treat it as a best interest and deal with the child from its date of birth, as I would understand I would have to, I think I have to take additional testimony here today." (Tr., pp. 4-5.)

{¶11} At the hearing, the trial court granted the unopposed motion to consider the evidence adduced at the first hearing.

ASSIGNMENT OF ERROR NUMBER ONE

{¶12} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ITS FAILURE TO FOLLOW THE DIRECTIVE OF THIS COURT IN CASE NO. 07-NO-339, BY HOLDING A DE NOVO TRIAL ON ALL ISSUES RELEVANT TO THE CUSTODY OF VICTORIA TABLER RATHER THAN DETERMINING SUITABILITY BASED UPON THE EVIDENCE ALREADY SUBMITTED."

{¶13} Because the trial court first believed that the CPO constituted an initial custody determination, the court limited the evidence offered at the first hearing to events that occurred after the CPO was issued. According to the statement of the trial court prior to the commencement of the second hearing, it conducted the second hearing in order to accept testimony regarding any relevant events that occurred from Victoria's birth to the issuance of the CPO.

{¶14} Contrary to the trial court's stated purpose, the testimony at the second hearing focused on the relationship of the parties during the time that Appellee had custody of Victoria. Appellant also points out that Tabler was permitted to offer testimony and cross-examine witnesses, despite the fact that he did not appeal the trial court's original order. Oddly, the trial court did reconsider Tabler's motion for custody even though it was not part of the remand order. Finally, although Appellant does not raise the issue, the trial court twice asserted that it would undertake a "best interest of the child" determination, despite the fact that this Court instructed the trial court to determine whether Appellant was a suitable parent.

{¶15} Although Appellant alleges prejudicial error, she does not claim that she suffered any actual prejudice as a result of the trial court's decision to hold a second

hearing. In fact, the testimony provided at the second hearing was merely supplementary in nature and the trial court ultimately did use the correct standard of law in reaching its decision, despite the misstatement at the beginning of the second hearing. For these reasons, Appellant's first assignment of error is overruled. The remaining assignments of error relate to the trial court's custody determination, and will be treated together for the purpose of judicial economy.

## ASSIGNMENT OF ERROR NUMBER TWO

{¶16} "THE TRIAL COURT FINDING THAT APPELLANT IS NOT A SUITABLE PARENT IS CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

## ASSIGNMENT OF ERROR NUMBER THREE

{¶17} "THE TRIAL COURT FINDING THAT APPELLANT IS NOT A SUITABLE PARENT IS CONTRARY TO LAW AND CONTRARY TO THE PREVIOUS DECISION OF THIS COURT IN CASE NO. 07-NO-339.

## ASSIGNMENT OF ERROR NUMBER FOUR

{¶18} "THE TRIAL COURT FINDING THAT APPELLANT ABANDONED VICTORIA AND IS THEREFORE UNSUITABLE AS A CUSTODIAN IS CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

## ASSIGNMENT OF ERROR NUMBER FIVE

{¶19} "THE TRIAL COURT FINDING THAT APPELLANT 'GENERALLY' ABANDONED VICTORIA AND [SIC] IS THEREFORE UNSUITABLE AS A CUSTODIAN IS CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶20} Parents who are suitable have a paramount right to custody of their minor children. *In re Perales* (1977), 52 Ohio St.2d 89, 97, 369 N.E.2d 1047. "In a child custody case arising out of a parentage action between a natural parent of the child and a nonparent, a trial court must make a parental unsuitability determination on the record before awarding legal custody of the child to the nonparent." *Hockstok* at syllabus.

{¶21} "It is well recognized that the right to raise a child is an 'essential' and 'basic' civil right." *In re Hayes* (1997), 79 Ohio St.3d 46, 48, citing *In re Murray* (1990), 52 Ohio St.3d 155. Moreover, a parent's right to custody of his child is paramount. Id., citing *Perales* at 97. Because a parent has a fundamental liberty interest in the custody of his or her child, this important legal right is "protected by law and, thus, comes within the purview of a 'substantial right'[.]" *Murray* at 157. "Therefore, parents 'must be afforded every procedural and substantive protection the law allows.' " *In re Hayes*, 79 Ohio St.3d at 48, quoting *In re Smith* (1991), 77 Ohio App.3d 1.

{¶22} Accordingly, it is well settled that in custody disputes between parents and nonparents, "a court may not award custody to the nonparent 'without first determining that a preponderance of the evidence shows that the parent abandoned the child; contractually relinquished custody of the child; that the parent has become totally incapable of supporting or caring for the child; or that an award of custody to the parent would be detrimental to the child.' " *Hockstok* at ¶17, quoting *Perales*, syllabus.

{¶23} Thus, if the court concludes that the conduct of the parent constitutes abandonment, the parent may be judged unsuitable and the state may impinge the fundamental parental liberty interest of child custody. Id. at ¶17. R.C. 2151.011(53)(C) reads, in its entirety, "[f]or the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."

{¶24} "[I]n proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important." *Reynolds v. Goll* (1996), 75 Ohio St.3d 121, 124, 661 N.E.2d 1008, quoting *Trickey v. Trickey* (1952), 158 Ohio St. 9, 13, 106 N.E.2d 772. Consequently, a reviewing court must uphold the trial court's decision in such cases absent an abuse of discretion. *Masters v. Masters* (1994), 69 Ohio St.3d 83, 85, 630 N.E.2d 665. An abuse of discretion will only be found where the decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶25} " 'This highly deferential standard of review rests on the premise that the trial judge is in the best position to determine the credibility of witnesses because he or she is able to observe their demeanor, gestures and attitude. * * * This is especially true in a child custody case, since there may be much that is evident in the parties' demeanor and attitude that does not translate well to the record.' " *Blaker v. Wilhelm*, 6th Dist. No. WD-04-003, 2005-Ohio-317, ¶10, quoting *In re L.S.*, 8th Dist. No. 81687, 2003-Ohio2045, ¶12.

**{¶26}** As a matter of initial concern, our previous Opinion in this case raised in a footnote the idea that the trial court may have made an implicit suitability finding with respect to Victoria, because the trial court awarded custody of Alexandria to Appellant. Of course, the test for "parent vs. parent" custody determinations, which was the case when determining Alexandria's custody, is different than for "parent vs. non-parent" determinations, the situation we are faced with in Victoria's case. Moreover, Appellant could have "abandoned" Victoria, as that term is defined in the revised code, but still be awarded custody of Alexandria.

**{¶27}** The trial court relied on two time frames where Appellant allegedly lost contact with Victoria, although those periods were not specifically identified by the trial court. From the record, it appears that one of those time frames encompassed several months when Appellant was pregnant with her youngest child, Caroline.

**{¶28}** Appellee testified that she brought Victoria to a location chosen by the parties each week for two or three months starting in May, 2005, but that Appellant did not appear. (2/8/08 Tr., pp. 180-182.) Appellee testified that she tried to maintain contact with Appellant via Shelby Hughes, but that Appellant had no contact with Victoria from May through late November, 2005.

**{¶29}** Appellant testified that it was Appellee who did not appear as scheduled, and that Appellee would deny Appellant visitation whenever Appellee was angry with her. (11/20/06 Tr., pp. 97-98.) Appellant introduced several small calendars into evidence, which contained notations regarding Appellant's visitation schedule with Victoria and Alexandria. From the end of May of 2005, through November, 2005, there are repeated notes that indicate that Victoria failed to appear

for visitation. (Plaintiff's Exh. No. 7.) Shirley Petrone, a friend who often accompanied Appellant when she went to pick up Victoria, testified that Appellant bought a birthday cake for Victoria in July, 2005, and that the cake stayed in the freezer for "probably two months" because Appellee continuously forestalled Appellant's visitation. (2/8/08 Tr., pp. 333-335.)

{¶30} It is clear from the judgment entry that the trial court credited Appellee's testimony. The trial court plainly states that Appellant failed to appear for exchanges at the drop off point. (11/3/08 J.E., p. 2.) The trial court also opined that Appellant was "not a stranger to the court system," and would have likely involved the courts if she was being denied visitation. (11/3/08 J.E., pp. 2-3.) The trial court found that Appellant's explanation that she was denied access to Victoria during her pregnancy was not credible. (11/3/08 J.E., p. 3.)

{¶31} In addition to the finding of abandonment, the trial court recounted Appellant's history of bad parenting, beginning with her voluntary relinquishment of custody of Victoria over to Appellee, and culminating in her failure to accompany Victoria to Columbus, Ohio when she needed surgery to repair a hernia, despite the fact that Appellee offered to take Appellant to Columbus. (11/3/08 J.E., p. 3.) The trial court also took a dim view of Appellant's efforts to get a CPO against her then dying husband. The trial court considered Appellant's statement at the hearing that she had, "changed [her] life style," and that she was, "ready to be the mother of [Victoria]," to be an implicit acknowledgment that she had abandoned Victoria in the past. (11/3/08 J.E., p. 2.)

**{¶32}** Tabler, who testified at both the first and second hearings that he had his alcoholism under control, was arrested for driving under the influence shortly before the second half of the second hearing. (11/3/08 J.E., p. 3.) The trial court concluded that both parents had abandoned Victoria and that neither parent was suitable. In its judgment entry, the trial court also noted that Victoria wants to continue to live with her grandparents. (11/3/08 J.E., p. 4.)

**{¶33}** The trial court summarized its view of the case as follows:

**{¶34}** "There are no outside forces, unforeseen circumstances, or unhappy twists of fate that caused either parent not to rear Victoria. Of their own volition, the rearing of Victoria was abdicated to [Appellee] and her husband. When do parents forfeit their right to custody? Certainly, after five (5) years, as in this case, they have." (11/3/08 J.E., p. 4.)

**{¶35}** Although the trial court appears, in the above-cited quotation, to have given a broad reading to the term "abandonment," there is no question that Appellee's testimony, if believed, demonstrates "abandonment" as that term has been defined by the Ohio Revised Code by a preponderance of the evidence. According to Appellee's testimony, she had no contact with Appellant from the end of May 2005 through November of 2005. Consequently, the record reflects that Appellant, "failed to visit or maintain contact with the child for more than ninety days." R.C.. 2151.011(53)(C). Because the trial court is in a unique position to assess the credibility of the witnesses, we must accept the factual findings of the trial court, unless the trial court abused its discretion. No such abuse of discretion is apparent from the record.

**{¶36}** Moreover, this case is distinguishable from *In re Custody of Lowe*, 7th Dist. No. 00 CO 62, 2002-Ohio-440, where the trial court relied on inappropriate evidence to conclude that the parent in that case was unsuitable. Here, the trial court relied on abandonment as the basis of its decision. While the trial court criticized Appellant's parenting decisions, this case does not involve a fact pattern like *Lowe*, where the trial court's decision was predicated upon best interest considerations rather than a suitability determination. Accordingly, Appellant's four remaining assignments of error are overruled, and the judgment of the trial court is affirmed.

Vukovich, P.J., concurs.

DeGenaro, J., concurs.