[Cite as *McCue v. Marlin*, 187 Ohio App.3d 1, 2010-Ohio-1298.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| McCUE, | ) | CASE NO. 09 MA 52 |
| | ) | |
| APPELLEE, | ) | |
| | ) | |
| V. | ) | OPINION |
| | ) | |
| MARLIN, | ) | |
| | ) | |
| APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the Court of Common Pleas, Domestic Relations Division, of Mahoning County, Ohio Case No. 08 DV 642

JUDGMENT:     Affirmed in part. Modified.

APPEARANCES:

Benjamin Joltin and Jill K. Landau, for appellee.

Thomas A. Campbell, for appellant.

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated: March 24, 2010

WAITE, Judge.

{¶1} Appellant, Sidney J. Marlin, appeals the judgment of the Mahoning County Court of Common Pleas, Domestic Relations Division, issuing a domestic-violence civil protection order ("DVCPO") to appellee, Corrie A. McCue, for the protection of her minor child, N.M. Appellant argues that the protection order usurps the jurisdiction of the juvenile court, in which a parental-rights action is pending regarding N.M. Appellant argues that R.C. 3113.31(E)(1)(d) specifically prevents the domestic relations court from issuing any orders in a DVCPO allocating parental rights if another court is determining those rights. The domestic relations court in this case has already acknowledged that the juvenile court has priority of jurisdiction, and certain aspects of the DVCPO relating to parental rights and visitation were excised in deference to that jurisdiction. The question on appeal is whether the domestic relations court went far enough in limiting the DVCPO so that it did not interfere with the jurisdiction already pending in the juvenile court. A review of the DVCPO indicates that a few more provisions should have been excised, and thus, the judgment of the domestic relations court is hereby modified.

## CASE HISTORY

{¶2} Appellant is the father of the minor child N.M. Appellee is the child's mother. The parties are not married.

{¶3} In 2007, the parties participated in custody, paternity, and visitation proceedings in the Mahoning County Court of Common Pleas, Juvenile Division.

{¶4} On November 12, 2008, appellant participated in visitation with N.M. pursuant to the parenting order from the juvenile court. Appellee reported allegations of

abuse to the juvenile court stemming from this visitation. The matter was investigated by Melissa Bennet, a caseworker from Mahoning County Children Services ("MCCS"). She reported that there had been two prior referrals regarding the alleged incident and that both were summarily dismissed. She met with the parties and the child on December 1, 2008, and found no evidence of abuse. Attorney Jennifer Robbins, the guardian ad litem of the child, also investigated the incident and found no evidence of abuse. It was her opinion that appellant should be awarded standard parenting-time rights with no supervision.

{¶5} While these investigations were being conducted in juvenile court, appellee filed a petition for a DVCPO on November 18, 2008, in the domestic relations court. An ex parte DVCPO was issued the same day. A full hearing was held before a magistrate on December 3 and 4, 2008. The magistrate found that when the child was returned to appellee on November 12, 2008, the child had reported discomfort between the anus and scrotum. Appellee took the child to a doctor, who diagnosed the redness as diaper rash. According to appellee, the child said that appellant and his mother, Yvonne Hurst, poked him in the anus with a knife. Appellee testified that she contacted MCCS, and it dismissed the allegation without investigation. She took the child to a counselor, who also reported the incident to MCCS, and the matter was dismissed again without investigation. She testified that the child's behavior changed in the months after the incident. She testified that the child screams, runs, and hides when appellant arrives for his parenting time.

{¶6} Appellee testified regarding a variety of sexual problems that appellant has had. She stated that appellant had been molested as a child and was molested by his counselor when he sought treatment for his earlier molestation, and that appellant himself molested his half-brother, who is two years younger than he. She testified that he bragged about molesting his brother. She alleged that appellant watches animated child pornography and uses the Internet to watch incest, rape, and violent pornography.

{¶7} Appellee testified that she does not get along with Hurst, appellant's mother. She also testified that she is being treated for depression.

{¶8} Appellee's mother, Norma McCue, testified that she noticed a bright red circle around the child's anus after he returned from visitation on November 12, 2008. She testified that she went with appellee and the child to the doctor, and she did not believe that the doctor gave the child a thorough examination. She did not believe that the child had diaper rash. She testified that the child could not sit for the next few days because his bottom hurt. She testified that the child's behavior changed after the incident. The child began masturbating and sticking his fingers in his anus. The child would protest when his diaper was changed and ask whether appellant was coming.

{¶9} Appellee's father, Gordon McCue, testified that he did not believe the redness on the child was diaper rash, and he agreed that the child began acting differently after the incident. He testified that the child screams when appellant arrives for visitation.

{¶10} Hurst testified that she went with appellant to pick up the child at 5:00 p.m. on November 12, 2008. The child was sleeping, so they waited. Once the child awoke,

the McCues fed him and changed his diaper, which was soaked through to his clothes. She testified that Norma McCue asked her husband to get some diaper cream for the child. She and appellant did not leave with the child until 6:00 p.m. They went to the A&W restaurant in Boardman, ate dinner, and returned to the McCue home with the child at 8:00 p.m. That ended the visitation period. She testified that she never left the child unattended during that time, did not check to see whether the child needed a diaper change, and did not poke the child with anything.

{¶11} Hurst testified that appellant did have a prior history with molestation. Appellant had been taken from his home and placed in treatment programs and foster care. He had been returned to the home after 1 1/2 years.

{¶12} Appellant's father, Sidney Hurst, testified that appellant had molested his younger brother on one occasion. He also testified about appellant's use of pornography.

{¶13} Appellant did not testify at the hearing.

{¶14} The court prepared findings and fact and conclusions of law after the hearing. The magistrate placed no weight on the testimony of Melissa Bennet of MCCS and placed little weight on the testimony of the guardian ad litem. The magistrate did not find Hurst to be credible. The magistrate found it significant that appellant viewed pornography and bragged about molesting his brother. The magistrate was aware that if he accepted appellee's testimony as true, he would be the first person to believe it because it had been previously dismissed by a doctor, the children services board, the guardian ad litem, and the child's counselor. The magistrate accepted appellee's

testimony that the doctor had done an inadequate examination of the child and that the redness was not due to diaper rash.

{¶15} The court concluded that appellant had engaged in civil domestic violence against the child by committing an act that resulted in physical harm to the child and that resulted in the child's being an abused child. The court designated appellee as the residential parent and suspended appellant's visitation rights. The court ordered appellant not to enter or interfere with the child's residence, school, or child-care providers. The court ordered appellant to stay 500 feet away from the child. The court ordered appellant to have no contact with the child, whether in person or by phone, fax, email, or any other type of communication. The court made the terms of the DVCPO effective until December 8, 2013.

{¶16} Appellant filed a motion to set aside the magistrate's order, arguing a failure of the evidence and a lack of jurisdiction. Appellant later withdrew the evidentiary objection and asserted only lack of jurisdiction based on R.C. 3113.31(E)(1)(d).

{¶17} On February 13, 2009, the court ruled on the objections. The court agreed with appellant that pursuant to R.C. 3113.31(E)(1)(d), it had no jurisdiction to issue temporary orders allocating parental rights and visitation. The court ordered that paragraphs 12 and 13 be stricken from the DVCPO. Paragraph 12 stated: "**PARENTAL RIGHTS AND RESPONSIBILITIES ARE TEMPORARILY ALLOCATED AS FOLLOWS**: * * * Petitioner, Corrie McCue, is designated residential parent of the parties' minor child." Paragraph 13 stated: "Respondent's visitation rights are

suspended." (Boldface and capitalization sic.) The court ordered that the remainder of the DVCPO would remain in full effect until December 8, 2013.

**{¶18}** This appeal followed on March 13, 2009.

FINAL APPEALABLE ORDER STATUS

**{¶19}** R.C. 3113.31(G) states that any order that grants or denies a petition for a protection order or a motion to modify or terminate a protection order is a final, appealable order.

ASSIGNMENT OF ERROR

**{¶20}** "The Mahoning County Domestic Relations Court erred as a matter of law by its Judgment Entry of February 13, 2009 which adopted a Domestic Violence Protection Order which interferes with and effectively terminates the Mahoning County Juvenile Court's orders regarding parental rights and responsibilities."

**{¶21}** Appellant argues that R.C. 3113.31(E)(1)(d) specifically prevents the domestic relations court from issuing any orders in a DVCPO allocating parental rights if another court already has jurisdiction over visitation and parental-rights matters regarding the minor child being protected by the DVCPO. Appellant submits that the juvenile court already had jurisdiction over all visitation and parental rights issues with respect to N.M., and thus the domestic relations court could not issue a DVCPO. Appellant asks that the DVCPO be vacated.

**{¶22}** R.C. 3113.31(E)(1)(d) states:

**{¶23}** "(E)(1) After an ex parte or full hearing, the court may grant any protection order, with or without bond, or approve any consent agreement to bring about a

cessation of domestic violence against the family or household members. The order or agreement may:

**{¶24}** "* * *

**{¶25}** "(d) Temporarily allocate parental rights and responsibilities for the care of, or establish temporary parenting time rights with regard to, minor children, if no other court has determined, or is determining, the allocation of parental rights and responsibilities for the minor children or parenting time rights;"

**{¶26}** A DVCPO is not a custody proceeding. *Tabler v. Myers*, 173 Ohio App.3d 657, 2007-Ohio-6219, 880 N.E.2d 103, ¶ 15 (Seventh District Court of Appeals). Any rulings in a DVCPO dealing with the custody of a minor child are only temporary orders that last until the custody matter is litigated in a domestic relations or juvenile court. Id. A court in a DVCPO proceeding cannot issue a permanent decree allocating parental rights and responsibilities, nor can it modify an existing decree. *Couch v. Harrison* (Feb. 12, 2001), 12th Dist. No. CA2000-08-063.

**{¶27}** Furthermore, when the domestic relations court presiding over the DVCPO is not the court that has jurisdiction over parental rights and responsibilities, the domestic relations court has no authority to issue orders regarding parental rights or visitation. Every court that has looked at this issue has come to the same conclusion. "A county domestic relations court is without jurisdiction under R.C. 3113.31(E)(1)(d) when the county juvenile court has made a custody determination." *Couch*, 12th Dist. No. CA2000-08-063, at *4; see also *Tischler v. Vahcic* (Nov. 16, 1995), 8th Dist. No. 68053 (DVCPO cannot modify existing visitation orders from juvenile court); *Stella v.*

*Platz* (June 17, 1999), 4th Dist. No. 98CA18 (DVCPO cannot modify an existing custody order from juvenile court); *Rush v. Rush* (Nov. 18, 1999), 8th Dist. No. 74832 (Cuyahoga County Domestic Relations Court could not issue visitation orders within a DVCPO because the Lake County Domestic Relations Court was determining visitation matters); *Waters v. Lattany*, 6th Dist. No. L-06-1157, 2007-Ohio-1047, ¶ 32 (domestic relations court may temporarily allocate parental rights only if no other court has previously or is concurrently doing so); *Kurincic v. Kurincic*, (Feb. 24, 2000), 8th Dist. No. 75592, *6 (if a juvenile-custody case is pending, the domestic relations court cannot award temporary custody in DVCPO proceeding).

**{¶28}** One of the purposes of R.C. 3113.31(E)(1)(d) is to prevent forum shopping: "We have interpreted this limitation of the court's authority as a means to prevent forum shopping when another court has already issued a custody order." *Parker v. Jamison*, 4th Dist. No. 02CA002857, 2003-Ohio-7295, ¶ 24.

**{¶29}** The domestic relations court in the instant case determined that the juvenile court has exclusive jurisdiction over the parenting action pending in that court. The domestic relations court deleted two sections of the DVCPO that expressly dealt with parental rights and visitation. The parties, and the domestic relations court itself, agree that R.C. 3113.31(E)(1)(d) controls the scope of the DVCPO, and it is our understanding that the only question on appeal is whether the domestic relations court was thorough enough in excising portions of the DVCPO that appear to infringe on the jurisdiction of the juvenile court. We find that there are other sections of the DVCPO

that should have been deleted, and therefore, appellant's argument has merit, and the assignment of error is sustained in part.

{¶30} The remedy in this case is not simply to vacate or reverse the DVCPO. There are many aspects of the DVCPO that do not relate to parental rights or visitation and thus are not affected by this appeal. Paragraph 1 orders appellant not to abuse the protected person. Paragraph 11 prohibits appellant from possessing, using, or carrying deadly weapons. Paragraph 17 orders appellant not to consume, use, or possess illegal drugs or beverages containing alcohol. These provisions will not conflict with any parental rights or visitation order that emanates from the juvenile court. On the other hand, R.C. 3113.31(E)(1)(d) affects more than the standard two paragraphs in a DVCPO explicitly addressing parental rights and visitation (paragraphs 12 and 13). We are reminded that "[d]epending upon how a divorce decree allocates parental rights and responsibilities, it may modify multiple aspects of the [civil protection order] beyond the paragraphs dealing with parental rights and visitation." *State v. Price*, 118 Ohio St.3d 144, 2008-Ohio-1974, 886 N.E.2d 852, ¶ 20.

{¶31} In this case, the following paragraphs of the DVCPO also deal with parental rights and visitation, at least in part, and should be vacated along with paragraphs 12 and 13:

{¶32} "5. **RESPONDENT SHALL NOT ENTER** or interfere with the residence, school, business, place of employment, or child care providers of the protected persons named in this order, including the buildings, grounds and parking lots at those locations. Respondent may not violate this order even with the permission of a protected person.

{¶33} "6. **RESPONDENT SHALL STAY AWAY FROM PETITIONER** and all other protected persons named in this order, and not be present within 500 feet or _____ (distance) of any protected persons wherever protected persons may be found, or any place the Respondent knows or should know the protected persons are likely to be, **even with Petitioner's permission**. If Respondent accidently comes in contact with protected persons in any public or private place, Respondent must depart *immediately*. This order includes encounters on public and private roads, highways and thoroughfares.

{¶34} "7. **RESPONDENT SHALL NOT INITIATE OR HAVE ANY CONTACT** with the protected persons named in this Order or their residences, businesses, places of employment, schools, day care centers, or child care providers. Contact includes, but is not limited to, telephone, fax, e-mail, voice mail, delivery service, writings, or communications by any other means in person or through another person. Respondent may not violate this order even with the permission of a protected person." (Boldface and capitalization sic.)

{¶35} Paragraph 5 affects parental rights and visitation because visitation would be severely hampered, or perhaps made impossible, if appellant could not enter N.M.'s residence, school, and child care facilities or even enter the parking lots of these facilities. Paragraph 6 affects parental rights and visitation because it prohibits appellant from coming within 500 feet of N.M. Paragraph 7 affects parental rights and visitation because it prohibits appellant from having any contact with N.M., including contact by phone, email, in writing, or by any other means. These three paragraphs

directly affect the allocation of parental rights, particularly visitation rights. Under R.C. 3113.31(E)(1)(d), the domestic relations court should not have included these provisions in the DVCPO, based on the prior jurisdiction of the juvenile court over parental rights and visitation matters regarding N.M.

{¶36} The trial court's judgment entry expresses a concern that there is no provision for a domestic violence case to be certified or transferred to a juvenile court already dealing with parental-rights matters. Juv.R. 13 gives the juvenile court the broad authority to issue temporary orders "with respect to the relations and conduct of other persons toward a child who is the subject of the complaint as the child's interest and welfare may require." Juv.R. 13(B)(1). Those orders may be modified at any time for good cause whether on motion of a party or on the court's own motion. Juv.R. 13(B)(4). Thus, the relief available in a DVCPO is "readily available through the Juvenile Division." *Stella v. Platz*, 4th Dist. No. 98CA18, at *2. Because there is a custody proceeding pending in the juvenile court, appellee could have filed a motion so that N.M. would be protected from further contact from appellant, or she could have asked for appellant's visitation rights to be suspended. In fact, appellee could have requested any other protection for N.M. that was available through a DVCPO directly in the juvenile court.

{¶37} It appears to us that forum shopping may have occurred in this case. Appellee did not agree with the process used or the result arising from the juvenile court, so she filed for a DVCPO in the domestic relations court. The juvenile court had investigated a number of claims of child abuse and had dismissed them as having no

merit. The juvenile court already had jurisdiction over parental-rights matters and visitation while these allegations were occurring, prior to the filing of the DVCPO petition in the domestic relations court. In some instances, the appropriate response to this type of forum shopping may be to dismiss the petition for a civil protection order. See, e.g., *Bowers v. Bowers*, 2d Dist. No. 1655, 2005-Ohio-3327 (petition for civil protection order was filed in Greene County after unsuccessful attempts to prevent visitation in the divorce action in Darke County). In this case, R.C. 3113.31(E)(1)(d) can be enforced without completely vacating the DVCPO. Our conclusion that the domestic relations court cannot issue parental rights and visitation orders in the DVCPO does not affect the remaining portions of the DVCPO that do not deal with parental rights and responsibilities. Therefore, we find appellant's arguments persuasive in part, and we sustain the assignment of error in part. The sections of the DVCPO that are affected by R.C. 3113.31(E)(1)(d) are paragraphs 5, 6, 7, 12 and 13. The domestic relations court has already excised paragraphs 12 and 13. Therefore, the DVCPO is further modified to delete paragraphs 5, 6 and 7. The remaining aspects of the DVCPO are affirmed.

Judgment accordingly.

VUKOVICH, P.J., and DONOFRIO, J., concur.