[Cite as *M.A.M. v. A.P.H.*, 2023-Ohio-3503.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| [M.A.M.] ON BEHALF OF MINOR CHILDREN | : | |
| | : | |
| | : | C.A. No. 29763 |
| Appellee | : | |
| | : | Trial Court Case No. 2020 DV 01557 |
| v. | : | |
| | : | (Appeal from Common Pleas Court- |
| [A.P.H.] | : | Domestic Relations) |
| | : | |
| Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on September 29, 2023

. . . . . . . . . . .

ALAN J. STATMAN, Attorney for Appellant

MICHELLE M. MACIOROWSKI, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1}  Father appeals from a consent agreement that he entered into with Mother and that was then approved by the domestic relations court; the consent agreement resolved Mother's petition for a domestic violence civil protection order ("protection order") in favor of the parties' minor children.  Father argues that the domestic relations court

erred in failing to dismiss the petition for four reasons: 1) there was an unreasonable delay before a full hearing was scheduled on the petition; 2) the domestic relations court lacked jurisdiction to approve the consent agreement due to proceedings pending in the juvenile court related to custody of the children; 3) one of the children had never been endangered, as alleged; and 4) a material term of the agreement was frustrated when the reunification counselor named in the agreement declined to provide counseling to the parties. The matter is reversed in part and remanded to the domestic relations court for clarification of certain provisions of the consent agreement and a determination of whether any of the provisions address parental rights and responsibilities and therefore infringe upon the jurisdiction of the juvenile court. In all other respects, the judgment is affirmed.

## Procedural History

{¶ 2} On October 23, 2020, Mother filed a petition for a protection order against Father on behalf of their children, N.H. and A.H. The petition stated:

I got my daughters back from parenting time with [Father] on October 19, 2020. My daughter, N.H., reported to me that her father had picked her up by the throat and screamed at her. I have made a police report and the matter is being referred for a Care House investigation. [Father] has a history of violence and has two pending criminal charges in Kettering, one for assault [and] the other for domestic violence against his former wife that occurred in his home. Over the past months, [Father's] behavior has become more erratic, angry and violent. My children return home from parenting time distressed and afraid. I fear for their safety and well-being

during [Father's] parenting time.

{¶ 3} The domestic relations court issued an ex parte protection order, and Father was served with it on October 23, 2020. A full hearing was scheduled for November 5, 2020. On March 26, 2021, after a telephone status conference, the court continued the matter, setting it for a full hearing on June 4, 2021. The record contains no explanation for the delay between November 2020 and March 26, 2021. On April 15, 2021, Father filed a motion for supervised parenting time.

{¶ 4} On May 21, 2021, the parties jointly moved for a continuance, noting that Father's pending criminal cases had been continued until July 28, 2021. The court granted the motion and continued the matter until September 16, 2021. The court also extended the expiration of the ex parte protection order until January 23, 2022 by agreement of the parties. On October 29, 2021, Mother moved the court to further extend the ex parte protection order, noting that Father had moved for a continuance of his pending jury trial in Kettering M.C. No. 20 CRB 01311 (which involved N.H. and arose from the incident alleged in the petition for the protection order), and the municipal court had granted the motion. On May 18, 2022, Father filed a motion to set a hearing on the protection order, noting that a plea deal had been reached in Case No. 20 CRB 01311.

{¶ 5} On May 19, 2022, Mother responded to Father's motion by asking the court not to schedule a hearing until Father's "sentencing in all of his criminal matters" was complete, noting that Father had five separate cases, involving five different victims, pending for sentencing. Father replied the same day, characterizing Mother's response as a "delay tactic"; he argued that his sentencing in Case No. 20 CRB 01311 was

scheduled for the following day (May 20) and that the other matters involved different people and would not be a basis for a continuance of the proceedings on Mother's petition. The court set the matter for a full hearing on August 26, 2022.

**{¶ 6}** On July 11, 2022, Father filed a motion to dismiss Mother's petition for lack of prosecution. He noted that he had not seen his children since October 23, 2020. He also asserted that the criminal case involving N.H., Case No. 20 CRB 01311, had been fully resolved on May 20, 2022. Citing R.C. 3113.31(E)(1)(d) and *McCue v. Marlin*, 187 Ohio App.3d 1, 2010-Ohio-1298, 930 N.E.2d 855 (7th Dist.), Father asserted that "key prohibitions" of the ex parte protection order exceeded the domestic relations court's jurisdiction and interfered with parenting time rights that had been previously determined by the Montgomery County Juvenile Court.

**{¶ 7}** In response to the motion to dismiss. Mother argued that Father's multiple continuances of his criminal matters, the pandemic, and scheduling issues related to having a visiting judge had caused the delays, not her failure to prosecute. Mother asserted that there were no provisions in the ex parte protection order granting custody or suspending parenting time, denied forum shopping, and argued that *McCue* was distinguishable. She also pointed out that the domestic relations order was an ex parte order, not a final order, and argued that the children were entitled to a full hearing on whether they were in danger of domestic violence by Father, which was within the jurisdiction of the domestic relations court.

**{¶ 8}** On August 5, 2022, the domestic relations court denied the motion to dismiss. The court noted that, since the filing of the parties' joint motion to continue, several

attorneys had entered appearances on Father's behalf and then withdrawn, but Father had been represented at the time of each continuance. The court also noted that Father's criminal matters had been continued several times, which had led to continuances of the domestic relations matter without objection from Father. The court ordered that the August 26, 2022 full hearing would proceed as scheduled. The court did not address the jurisdictional argument raised in Father's motion.

{¶ 9} On August 25, 2022, Father requested a continuance due to the illness of counsel. The court granted the continuance and reset the full hearing for October 27, 2022. On that date, after lengthy negotiation, the parties entered into the consent agreement, which is discussed more fully below and which was read into the record.

{¶ 10} On December 12, 2022, Father filed a motion to dismiss the consent agreement as to A.H., because no threats or violence against A.H. had been alleged. On January 25, 2023, the court denied the motion to dismiss, noting that the parties' consent agreement included A.H. The court also ordered that the consent agreement be typed and submitted to the court by February 7, 2023, and that if it was not submitted, the parties' exhibit that was signed and submitted to the court on October 27, 2022, would be adopted by the court as the parties' consent agreement.

{¶ 11} Also on January 25, 2023, Father filed a motion asking the court to set a hearing on the pending protection order. He noted that the reunification counselor named in the consent agreement, Dr. Antoinette Cordell, had declined to provide counseling services. Father argued that the specific inclusion of Dr. Cordell in the consent agreement had been a material term that was now "impossible," that the parties

had been unable to agree on an alternative counselor, and that due process required a full hearing. On February 7, 2023, Mother filed a typed copy of the consent agreement as requested by the court. On February 9, 2023, the court ordered Mother to respond to Father's January 25, 2023 motion for a hearing within 14 days. In her response, Mother indicated that she took "no position" on the matter and deferred to the judgment of the court.

{¶ 12} On March 10, 2023, the court denied Father's motion to schedule a full hearing. The court noted that Father's assertion that the parties had been unable to agree on an alternative counselor indicated to the court that "the act of reunification counseling" itself was a material part of the agreement, but not the specific counselor. The court noted that Mother had filed a retyped and "signature verified" version of the consent agreement, and that Father had "apparently declined to authorize his signature" on the typed agreement. The court therefore adopted the consent agreement that Mother had signed and submitted to the court on October 27, 2022.

{¶ 13} Father appeals, raising four assignments of error.

### Jurisdiction

{¶ 14} For ease of analysis, we will first consider Father's second assignment of error:

> THE TRIAL COURT ERRED BY FAILING TO DISMISS THE DOMESTIC VIOLENCE PROTECTION ORDER BECAUSE THE DOMESTIC RELATIONS COURT DID NOT HAVE JURISDICTION TO ISSUE AN ORDER THAT INTERFERED WITH THE ORDER OF THE

JUVENILE COURT.

{¶ 15} Father argues that the consent agreement impermissibly interfered with Father's custodial rights and parenting time by requiring him to stay away from N.H. and A.H. and not contact them. Father argues that Mother engaged in forum shopping, asserting that she acknowledged during the ex parte hearing that the juvenile court had denied her an ex parte order before she filed her petition in the domestic relations court. Father relies on R.C. 3113.31(E)(1)(d) and *McCue,* 187 Ohio App.3d 1, 2010-Ohio-1298, 930 N.E.2d 855. Father urges us to take judicial notice that there were pending motions regarding parental time and responsibilities in the juvenile court, which had "been continued repeatedly" due to pending matters in the domestic relations court.

{¶ 16} Although Father did not specifically move to dismiss Mother's petition for lack of subject matter jurisdiction, his July 2022 motion to dismiss "for lack of prosecution" did raise the issue that the protection order interfered with his custody rights. The trial court did not address the issue, implicitly denying the suggestion that the protection order should be dismissed for lack of jurisdiction.

{¶ 17} We have previously held that a de novo standard of review applies to a trial court's decision on a motion to dismiss for lack of subject-matter jurisdiction. *Zimmerman v. Montgomery Cty. Pub. Health Dept.*, 2d Dist. Montgomery No. 26816, 2016-Ohio-1423, ¶ 13. "De novo review requires an 'independent review of the trial court's decision, without any deference to the trial court's determination.' " *Jackson v. Internatl. Fiber*, 169 Ohio App.3d 395, 2006-Ohio-5799, 863 N.E.2d 189, ¶ 17 (2d Dist.); *see also Fifth Third Bank, Natl. Assn. v. Leveck*, 2022-Ohio-546, 185 N.E.3d 641, ¶ 10

(2d Dist.).

{¶ 18} The Ohio Supreme Court has noted that "domestic-violence civil protection orders are creatures of statute," R.C. 3113.31, which "establishes a comprehensive statutory scheme for issuing, modifying, and terminating domestic-violence protection orders." *Cyran v. Cyran*, 152 Ohio St.3d 484, 2018-Ohio-24, 97 N.E.3d 487, ¶ 13. "The statute vests the court with broad discretion to tailor domestic-violence civil protection orders to fit the needs of each particular case." *Id.*, citing *Felton v. Felton*, 79 Ohio St.3d 34, 37-38, 679 N.E.2d 672 (1997).

{¶ 19} R.C. 3113.31 states, in pertinent part:

(E)(1) After an ex parte or full hearing, the court may grant any protection order, with or without bond, or approve any consent agreement to bring about a cessation of domestic violence against the family or household members or persons with whom the respondent is or was in a dating relationship. The order or agreement may:

* * *

(d) With respect to a petition involving family or household members, temporarily allocate parental rights and responsibilities for the care of, or establish temporary parenting time rights with regard to, minor children, if no other court has determined, or is determining, the allocation of parental rights and responsibilities for the minor children or parenting time rights[.]

{¶ 20} In *McCue*, 187 Ohio App.3d 1, 2010-Ohio-1298, 930 N.E.2d 855, upon which Father relies, a protection order was issued against a father for the protection of

his minor child, N.M. *Id.* at ¶ 1. Father and mother were not married, and in 2007, they had litigated custody, paternity, and visitation rights. *Id.* at ¶ 2-3. In 2008, mother reported allegations of abuse to the juvenile court after father's visitation with N.M. pursuant to the parenting order of that court. *Id.* at ¶ 4. The alleged incident was investigated by a Children Services caseworker and the guardian ad litem, and no evidence of abuse was found. *Id.*

{¶ 21} During the investigations in juvenile court, mother filed a petition for a protection order in the domestic relations court, and an ex parte protection order was issued. *Id.* at ¶ 5. After a full hearing, the magistrate found that father had engaged in domestic violence that resulted in the child's being an abused child. *Id.* at ¶ 15. The magistrate designated mother as the residential parent, suspended father's visitation rights, and ordered him to have no contact with the child. *Id.*

{¶ 22} Father objected to the magistrate's order for lack of jurisdiction based on R.C. 3113.31(E)(1)(d). *Id.* at ¶ 16. The trial court agreed that the magistrate had "had no jurisdiction to issue temporary orders allocating parental rights and visitation." *Id.* at ¶ 17. It struck two paragraphs of the protection order related to parental rights and responsibilities but left the rest of the protection order in effect.

{¶ 23} Father appealed, arguing that, because the juvenile court had jurisdiction over visitation and parental rights issues with respect to the child, the domestic relations court could not issue a protection order. *Id.* at ¶ 21. The Seventh District disagreed, although it did strike additional provisions from the protection order. The court noted that a "protection order is not a custody proceeding," and any "rulings in a protection order

dealing with the custody of a minor child are only temporary orders that last until the custody matter is litigated in a domestic relations or juvenile court." (Citations omitted.) *Id*. at ¶ 26. The court further noted that a "court in a protection order proceeding cannot issue a permanent decree allocating parental rights and responsibilities, nor can it modify an existing decree." *Id*. Further, "when the domestic relations court presiding over the protection order is not the court that has jurisdiction over parental rights and responsibilities, the domestic relations court has no authority to issue orders regarding parental rights or visitation." *Id.* at ¶ 27. The Seventh District noted that every "court that has looked at this issue has come to the same conclusion," citing several other cases. *Id*. It was significant to the Seventh District that one of the purposes of R.C. 3113.31(E)(1)(d) was "to prevent forum shopping." *Id.* at ¶ 28.

{¶ 24} The Seventh District found that the remedy was not simply to vacate or reverse the protection order, because many aspects of the protection order did not relate to parental rights or visitation and thus were not affected by the appeal. *Id.* at ¶ 30. The court found that R.C. 3113.31(E)(1)(d) controlled the scope of a protection order. In the court's view, the only question on appeal was whether the domestic relations court had been thorough enough in excising portions of the protection order that appeared to infringe on the jurisdiction of the juvenile court. *Id*. at ¶ 29. The court concluded that it had not, and it struck additional portions of the protection order. Specifically, the court vacated paragraphs which: prohibited father from entering multiple locations, including the child's residence, school, and child care facilities, "because visitation would be severely hampered, or perhaps made impossible," if father could not enter these facilities;

ordered him to stay 500 feet away from the child; and prohibited him from contacting the child. *Id.* at ¶ 31-34.

{¶ 25} The Seventh District concluded that, because a custody proceeding was pending in the juvenile court, mother "could have requested any other protection for N.M. that was available through a protection order directly in the juvenile court." *Id.* at ¶ 36. It further concluded that "forum shopping may have occurred in this case," noting that mother had not agreed with the process used in or the result of the juvenile court proceedings, so she had filed for a protection order in the domestic relations court. *Id.* at ¶ 37. The court found that R.C. 3113.31(E)(1) could be enforced without completely vacating the protection order, and that the remaining portions of the protection order that did not deal with parental rights and responsibilities could stand *Id.* at ¶ 37. The protection order was affirmed as modified by the deletion of three additional paragraphs. *Id.*

{¶ 26} Here, the parties entered into a consent agreement to resolve the petition for a protection order. Pursuant to the consent agreement, paragraph 4 of the ex parte protection order was removed, which had prevented Father from entering or interfering with "the residence, school, business, place of employment, day care centers, or child care providers of the children." Paragraphs 5 and 6, which had required Father to stay away from and not be within 500 feet of the children and to not initiate contact with the children had the words "except as modified herein" written at the bottom of the paragraphs. The substance of this modification was unclear. The consent agreement further stated that the parties agreed to begin reunification counseling with Dr. Antoinette

Cordell and that Dr. Cordell would speak with Father's counselor, the children's counselor, and the parties; supervised visitation would begin "at the recommendation of the reunification counselor." Further, the parties acknowledged in the agreement that there were juvenile court cases pending regarding the children, that the "consent agreement shall be dismissed in conjunction with further juvenile court orders," and that the provisions of the consent agreement should begin "ASAP and not [be] delayed."

{¶ 27} At the October 27, 2022 hearing, when the consent agreement was read into the record, the domestic relations court indicated it's understanding that there was an action pending in the juvenile court related to a shared parenting plan, which it recognized was still in effect and would be dealt with in that court; the court stated that the shared parenting plan would not be "subject to this Court's action * * * if we go forward on the [protection order.]" Also at the hearing, Father indicated that he believed the consent agreement to which he had agreed was "best for the children right now" and that he was satisfied with it.

{¶ 28} Pursuant to *McCue*, 187 Ohio App.3d 1, 2010-Ohio-1298, 930 N.E.2d 855, the remedy to any argument that the domestic relations court infringed upon the jurisdiction of the juvenile court is not simply to dismiss the entire protection order but to excise any portions of the order that usurp the juvenile court's jurisdiction. In our view, this same reasoning would apply to a consent agreement that resolves a petition for a protection order. Father, an experienced family law attorney, could have declined to enter into the consent agreement or moved to modify it pursuant to R.C. 3113.31(E)(8)(b), and he failed to do so. We also note that Father took inconsistent positions during these

proceedings. For example, he filed a motion for supervised parenting time in the domestic relations court while parenting proceedings were pending in the juvenile court; he filed a motion to set a hearing on the ex parte protection order; and he filed a motion to dismiss, arguing in part that provisions of the ex parte protection order exceeded the domestic relations court's jurisdiction, but then he purportedly consented to the jurisdiction of the domestic relations court by entering into the consent agreement, noting twice on the record his satisfaction with doing so.

{¶ 29} Pursuant to *McCue*, Father's assigned error is sustained in part. Because it is unclear the extent to which the consent agreement infringes on the jurisdiction of the juvenile court, we will remand for the domestic relations court to clarify the terms of certain provisions that were "modified" and to determine, with respect to each of the agreement's terms, whether they infringe upon the jurisdiction of the juvenile court with respect to parenting issues. In all other respects, the assignment of error is overruled.

**Unreasonable Delay**

{¶ 30} We will next consider Father's first assignment of error, which states:

THE TRIAL COURT ERRED BY FAILING TO DISMISS THE DOMESTIC VIOLENCE CIVIL PROTECTION ORDER BECAUSE OF THE UNREASONABLE DELAY OF A FULL HEARING PURSUANT TO R.C. 3113.31.

{¶ 31} Pointing to R.C. 3113.31(D)(2)(a), Father argues that the court was required to schedule a full hearing within 10 court days after the ex parte hearing. However, Father acknowledges the continuances he sought and focuses his argument on the delay

that occurred "between September 2021 and August 2022." According to Father, neither Mother nor the court showed good cause "to justify nearly a year of delay before a full hearing." Father asserts that, at the very least, a full hearing should have been held after May 20, 2022, when the criminal matter involving N.H. was resolved.

{¶ 32} Mother responds that "all six of [Father's] attorneys agreed that, in order to protect [his] right against self-incrimination, the criminal cases should be resolved prior to a full hearing on the protection order." She argues that Father then "apparently withdrew his consent" to the continuances, although "the facts of the matter had not changed" and there would still have been concerns about self-incrimination if he were subject to cross-examination regarding the facts of a matter for which criminal charges were pending.

{¶ 33} With respect to the timing of a full hearing, R.C. 3113.31(D)(2)(a) provides:

If the court, after an ex parte hearing, issues an order described in division (E)(1)(b) or (c) of this section, the court shall schedule a full hearing for a date that is within seven court days after the ex parte hearing. If any other type of protection order that is authorized under division (E) of this section is issued by the court after an ex parte hearing, the court shall schedule a full hearing for a date that is within ten court days after the ex parte hearing. The court shall give the respondent notice of, and an opportunity to be heard at, the full hearing. The court shall hold the full hearing on the date scheduled under this division unless the court grants a continuance of the hearing in accordance with this division. Under any of the following circumstances or for any of the following reasons, the court may grant a

continuance of the full hearing to a reasonable time determined by the court:

* * *

(ii) The parties consent to the continuance.

* * *

(iv) The continuance is needed for other good cause.

{¶ 34} Further, a "court has supervisory power and control over its docket." *State ex rel. Buck v. McCabe,* 140 Ohio St. 535, 537, 45 N.E.2d 763 (1942). Independent of any statute, as an incident to its authority to hear and determine causes, a court has the "power to grant continuances. Granting or refusing to grant a motion for continuance rests within the sound discretion of the court." *Id.*

{¶ 35} As noted above, Father specifically limits the issue of delay raised in this assignment of error to the period between September 2021 and August 2022. During that time, subpoenas were issued on September 7, 2021, for the full hearing set for September 16, 2021. On October 29, 2021, Mother sought an extension of the ex parte order of protection, due to Father's having obtained a continuance of the trial involving N.H. until February 9, 2022. She noted that the custody litigation in juvenile court had also been continued until February 2022, at Father's request. The court granted the motion.

{¶ 36} On May 18, 2022, Father moved the court to set a hearing on the ex parte protection order, and the court set the hearing for August 26, 2022. On July 11, 2022, Father filed a motion to dismiss for lack of prosecution, unreasonable delay, and lack of jurisdiction. The court denied the motion on August 5, 2022, ahead of the full hearing that Father had requested. On August 25, 2022, Father requested another continuance

due to illness of counsel; the court rescheduled the full hearing for October 27, 2022, and it occurred on that date.

{¶ 37} In our view, the delay in scheduling the full hearing for October 27, 2022, was of Father's own making.   Father repeatedly continued his criminal matters and the litigation in juvenile court, and he filed two motions to dismiss during the period in question.

{¶ 38} Father's first assignment of error is overruled.

**Dismissal Related to One of the Children**

{¶ 39} Father's third assignment of error states:

THE TRIAL COURT ERRED BY FAILING TO DISMISS THE DOMESTIC VIOLENCE CIVIL PROTECTION ORDER WITH REGARD TO THE MINOR CHILD[,] A.H.[,] BECAUSE THERE WAS NO ALLEGATION OF DANGER POSED TO HER.

{¶ 40} Father argument under this assignment of error relies on R.C. 3113.31(D)(1), which provides:

If a person who files a petition pursuant to this section requests an ex parte order, the court shall hold an ex parte hearing on the same day that the petition is filed.   The court, for good cause shown at the ex parte hearing, may enter any temporary orders, * * * that the court finds necessary to protect the family or household member * * * from domestic violence. Immediate and present danger of domestic violence to the family or household member * * * constitutes good cause for purposes of this section.

> Immediate and present danger includes, but is not limited to, situations in which the respondent has threatened the family or household member * * * with bodily harm * * *.

Father asserts that, in the absence of any allegation that he had threatened A.H. with bodily harm or had physically harmed her, there was no evidence that she was in danger from him and no basis for a protection order.

{¶ 41} Mother specifically included A.H. in the petition for the protection order. Mother asserts that A.H. was present and witnessed Father's treatment of N.H.; Mother's response to Father's motion to dismiss the consent agreement stated that A.H. had testified in Father's criminal trial regarding her observation of the violence inflicted upon N.H. The ex parte order and the consent agreement included A.H. Father knew the terms of the consent agreement when he signed it, including the fact that it included A.H. in its terms. Father expressed his satisfaction with the consent agreement twice on the record. For these reasons, Father's argument that the matter should have been dismissed with respect to A.H. is without merit.

{¶ 42} Father's third assignment of error is overruled.

**Reunification Counseling as a Material Term of the Consent Agreement**

{¶ 43} Father's fourth assignment of error states:

> THE TRIAL COURT ERRED BY FAILING TO SET THE DOMESTIC VIOLENCE CIVIL PROTECTION ORDER HEARING BECAUSE A MATERIAL TERM OF THE PROPOSED CONSENT ORDER WAS FRUSTRATED.

{¶ 44} Father asserts that the trial court should have granted his motion for a hearing on the protection order after the consent agreement was entered because he had relied on the provision that Dr. Cordell would be the reunification counselor when he entered into the consent agreement, as evidenced by the fact that the agreement specifically named her. He argues that, if the parties had intended for the reunification counselor to be "interchangeable," the agreement would not have identified the counselor specifically. Mother responds that neither party nor their counsel had actually spoken with Dr. Cordell on October 27, 2022, to obtain her agreement to reunification counseling; as such, the use of Dr. Cordell for reunification counseling could not have been a material term upon which the agreement rested.

{¶ 45} We agree with the domestic relations court that Father's assertion in his January 25, 2023 motion that he and Mother had been *unable to agree* on a reunification counselor after Cordell declined to serve in that role indicates that "the act of reunification counseling was the material part of this agreement, not the specific counselor." We further conclude that Father's argument that the consent agreement should be dismissed for lack of jurisdiction, while also arguing that the domestic relations court erred in failing to hold a full hearing on the petition for the protection order, fails in its duplicity. Father's fourth assignment of error is overruled.

**Conclusion**

{¶ 46} Having sustained in part Father's second assignment of error, the domestic relations court's judgment is reversed in part, and the matter is remanded for clarification of the provisions of the consent agreement and an examination of whether any of those

provisions infringe on the jurisdiction of the juvenile court. In all other respects, the judgment of the domestic relations court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and LEWIS, J., concur.