[Cite as *S.D. v. S.L.*, 2026-Ohio-2060.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

S.D.                                                    Court of Appeals No.  {87}WD-25-027

     Appellant                                      Trial Court No.  2024 DV 00034

v.

S.L.                                                    **DECISION AND JUDGMENT**

     Appellee                                       Decided:  June 2, 2026

* * * * *

Michael R. Bassett, for appellant

* * * * *

**DUHART, J.**

**{¶ 1}** This is an appeal filed by appellant, S.D., from the April 11, 2025 judgment of the Wood County Court of Common Pleas.  For the reasons that follow, we affirm the trial court's judgment.

**{¶ 2}** S.D. sets forth one assignment of error:

The trial court abused its discretion when it failed to list the parties' daughter as a protected party in light of appellee's conduct which took place in front of, and endangered, the parties' minor child.

## Background

{¶ 3} S.D. and appellee, S.L.,[1] were in a relationship from 2018 to 2021 and have a child together ("the child") who was born in 2019. S.D. and S.L. never married each other.

{¶ 4} On November 12, 2020, S.L. was charged in Perrysburg Municipal Court case No. CRB-20-01220, with, inter alia, domestic violence ("DV"), a first-degree misdemeanor, for an incident involving S.D. That same day, a motion for temporary domestic violence protection order ("DVPO") was filed by the prosecuting attorney on behalf of S.D., and the municipal court issued a temporary DVPO. Thereafter, S.L. pleaded guilty to the DV charge and the court sentenced S.L. to 180 days in jail, with 150 days suspended, and three years of probation, and issued a no-contact order.

{¶ 5} In July 2021, S.D. filed a petition for a DVPO in Wood County Court of Common Pleas case No. 2021DV0086. An ex parte DVPO was initially issued for a term of six months.[2]

{¶ 6} On August 16, 2021, S.L. was charged, in Perrysburg Municipal Court case No. CRB-21-00872, with violating a DVPO protecting S.D. on or about August 14, 2021.

---

[1] S.L. did not file a brief or otherwise participate in this appeal.
[2] The ex parte DVPO was ultimately extended until the expiration date of October 15, 2022. Then, on January 3, 2023, the ex parte DVPO was dismissed.

2.

{¶ 7} On August 17, 2021, S.L. was charged, in Ottawa County Municipal Court, with two counts of violating a DVPO protecting S.D., one count of menacing S.D. by stalking and one count of carrying a concealed weapon.

{¶ 8} On August 26, 2021, S.L. was charged, in Ottawa County Common Pleas Court case No. 2021-CR-178 with four counts of menacing S.D. by stalking and two counts of violating a DVPO protecting S.D. Subsequently, S.L. pled guilty to one count of violating a DVPO and one count of menacing by stalking.

{¶ 9} On December 9, 2021, S.L. pled guilty, in case No. CRB-21-00872, to violating a DVPO, and he was sentenced.

{¶ 10} On December 16, 2021, a hearing was held, in case No. CRB-20-01220, on S.L.'s violation of the terms of his probation. S.L. admitted the probation violation.

{¶ 11} S.L. appealed from his conviction, in case No. CRB-21-00872, for violation of a DVPO and, in case No. CRB-20-01220, the revocation of his probation based on the DVPO violation. This court affirmed. *See State v. Lewandowski*, 2023-Ohio-742 (6th Dist.).

{¶ 12} On April 3, 2024, S.D. filed a petition for an ex parte DVPO in Wood County Court of Common Pleas case No. 2024DV0034 to protect herself and the child. S.D. alleged in the petition, inter alia, that "[r]espondent [(S.L.)] has engaged in a pattern of violent behavior and stalking towards the [p]etitioner [(S.D.)] which has persisted across several years and counties." S.D. further alleged that "[o]n January 21, 2023, [r]espondent sent a friend to [p]etitioner's home to stalk her; as a result, [p]etitioner and

3.

the [child] were forced to enter a shelter for six months thereafter due to the stalking.  In May[] 2023, the [p]etitioner exited Wal[m]art and found the [r]espondent[3] parked bumper to bumper with her vehicle when she came out of Wal[m]art in Holland, Ohio."

{¶ 13} On May 13, 2024, S.L. filed a motion in limine to limit the evidence to be presented only to incidents since January 3, 2023.  On May 28, 2024, a hearing was held at which the magistrate granted the motion in limine.  On June 6, 2024, the magistrate granted the DVPO as to S.D. and the child.

{¶ 14} S.L. objected to the granting of the DVPO, and on January 30, 2025, the trial court sustained his objection.  The court ordered that a second hearing be held.  On March 3, 2025, the court held the hearing and on April 11, 2025, the court issued a DVPO with regard to S.D., but not the child.  S.D. appealed.

**Trial Court's April 11, 2025 Judgment**

{¶ 15} The trial court set forth a summary of the hearing and case, including the following which is relevant to S.D.'s appeal:

> This matter came before the Court March 3, 2025 for a [f]ull [h]earing upon [p]etitioner's [p]etition for [DVPO], filed April 3, 2024.
> . . .
> 5. Petitioner and [r]espondent have one child together . . .
> 6. There is an active custody and visitation order in Wood County Juvenile Court with respect to the child.
> . . .
> 9. Petitioner testified about an incident occurring on January 21, 2023, when [r]espondent's friend, [J.R.], knocked on her door.
> . . .

---

[3] S.D. later clarified that it was respondent's brother-in-law.

11. Petitioner believes [r]espondent sent [J.R.] to her residence to intimidate her.

12. Petitioner testified that in May of 2023 she came out of Walmart in Holland, Ohio and [r]espondent's brother-in-law was parked near her car and was watching her.

13. Petitioner testified that she believes [r]espondent sent the brother-in-law to intimidate her.

. . .

16. Petitioner requested a [DVPO] for her and the minor child[.]

17. Very little testimony was provided regarding occurrences of [DV] or stalking involving [the child].

18. The parties submitted briefs as to whether the domestic relations court has jurisdiction to issue a [DVPO] for [the child] when there is an existing custody order in the juvenile court.

19. The court finds that while a domestic relations court can issue a [DVPO] to protect a minor, its authority is limited to temporary measures that do not conflict with or modify existing custody orders issued by the juvenile court. *M.A.M. v. A.P.H.*, 2023-Ohio-3503 [(2d Dist.)].

20. The court finds that due to the limited testimony of domestic violence or stalking against the minor child and the [r]espondent's current incarceration there is not an immediate and present danger to the child under R[.]C[.] 3113.31.

**Standard of Review**

{¶ 16} "When the challenge to the [DVPO] involves the scope of the order-including the decision to add minor children as protected parties-we review the order for an abuse of discretion." *Adamski v. Adamski*, 2022-Ohio-32, ¶ 58 (6th Dist.), citing *Martindale v. Martindale*, 2017-Ohio-9266, ¶ 51 (4th Dist.), citing *Reynolds v. White*, 1999 WL 754496 (8th Dist. Sept. 23, 1999). *See also K.H. v. P.M.*, 2025-Ohio-263, ¶ 79 (6th Dist.).

{¶ 17} An abuse of discretion implies that the trial court's attitude was arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). If there is some competent, credible evidence in the record to support the trial court's

5.

decision, there is generally no basis for a reviewing court to find an abuse of discretion. *Ross v. Ross*, 64 Ohio St.2d 203, 204 (1980).

**Assignment of Error**

{¶ 18} S.D. argues that the trial court erred in denying her request for the DVPO to cover the child because the evidence was overwhelming that there were DV incidents which took place in front of and endangered the child. S.D. contends that the trial court "had a video of an incident and was able to see the explosive rage of [S.L.] and the disregard he showed for his child."

{¶ 19} S.D. asserts the "uncontroverted testimony reflected that [S.L.] headbutted [S.D.] while [S.D.] was holding [the child]" and "[d]uring the incident recorded on [video], [S.L.] threatened [S.D.] that 'nothing in here will survive.' [The child] was in the apartment at the time." S.D. also submits that S.L. had threatened the child and S.D. was concerned S.L. would harm the child. Despite this competent, uncontroverted evidence (because respondent called no witnesses to testify at the hearing), S.D. observes that the trial court still found there was "'limited testimony of [DV] or stalking against the minor child,'" and due to respondent's "'current incarceration there is not an immediate and present danger to the child.'"

{¶ 20} S.D. maintains "[t]his case is analogous to *Elmurr v. Makdessi*, 2019-Ohio-1437, ¶ 24 (Eighth Circuit.) . . . [where] the trial court found sufficient credible evidence

6.

that the respondent to the CPO had engaged in acts of [DV] against the petitioner."[4]  S.D. asserts, "[a]s in this case, the finding was made solely on the testimony of the petitioner. As in this case, the testimony of the petitioner included 'multiple accounts of physical violence against [petitioner] within close proximity of their daughter.'  As in this case, the petitioner testified that she feared for her daughter's safety."  S.D. notes that "[t]he [c]ourt held that 'Even if Elmurr's testimony did not contain credible evidence that Makdessi had engaged in acts of domestic violence directly against their daughter, the testimony was sufficient to conclude that Makdessi had repeatedly created a substantial risk to his daughter's health and safety, in accord with R.C. 2919.22, both by virtue of her proximity to domestic violence and the persistent threat against her mother.'"

{¶ 21} S.D. argues that the shocking and arbitrary decision by the trial court to not protect the child from S.L.'s violent nature must be reversed.

## Law

{¶ 22} In order to be entitled to a protection order under R.C. 3113.31, a petitioner must show by a preponderance of the evidence that the respondent has committed domestic violence, as defined in R.C. 3113.31(A)(1), against a family or household member.  *K.H.*, 2025-Ohio-263, at ¶ 74 (6th Dist.), citing *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus.  A family or household member includes "[a]ny of the following who is residing with or has resided with the respondent . . . a person

---

[4] The proper citation is *M.E. v. J.M.*, 2019-Ohio-1437 (8th Dist.).

7.

living as a spouse or a former spouse of the respondent . . . a child of the respondent." R.C. 3113.31(A)(3)(a)(i) and (ii).

{¶ 23} Relevant here, domestic violence is defined as including "[p]lacing another person by the threat of force in fear of imminent serious physical harm or committing [menacing by stalking] . . . [and] [c]ommitting any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code." R.C. 3113.31(A)(1)(a)(ii) and (iii). Menacing by stalking is defined as "engaging in a pattern of conduct [which] knowingly cause[s] another person to believe that the offender will cause physical harm to the other person or a family or household member . . . or cause mental distress to the other person or a family or household member." R.C. 2903.211(A)(1). A pattern of conduct is defined as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1). An abused child is defined in R.C. 2151.031(C), (D) and (E) as endangered, when a person "create[s] a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support,"[5] or by exhibiting "evidence of any physical or mental injury or death, inflicted other than by accidental means," or "[b]ecause of the acts of the child's parents . . . suffers physical or mental injury that harms or threatens to harm the child's health or welfare."

---

[5] As defined in R.C. 2919.22(A).

8.

{¶ 24} In *M.A.M.*, 2023-Ohio-3503 (2d Dist.), cited by the trial court, the appellate court set forth:

> The Ohio Supreme Court has noted that "[DVPOs] are creatures of statute," R.C. 3113.31, which "establishes a comprehensive statutory scheme for issuing, modifying, and terminating [DVPOs]." *Cyran v. Cyran* . . .2018-Ohio-24, . . . ¶ 13. "The statute vests the court with broad discretion to tailor [DVPOs] to fit the needs of each particular case." *Id.*, citing *Felton* . . . [at] 37-38 . . ."

*Id.* at ¶ 18.

> The *M.A.M.* court, citing *McCue v. Marlin*, 2010-Ohio-1298 (7th Dist.), set forth:

> The [*McCue*] court noted that a "[DVPO] is not a custody proceeding," and any "rulings in a [DVPO] dealing with the custody of a minor child are only temporary orders that last until the custody matter is litigated in a domestic relations or juvenile court." (Citations omitted.) *Id.* at ¶ 26. The [*McCue*] court further noted that a "court in a [DVPO] proceeding cannot issue a permanent decree allocating parental rights and responsibilities, nor can it modify an existing decree." *Id.*

*Id.* at ¶ 23.

## Analysis

{¶ 25} S.D. argues the trial court abused its discretion when it did not include the child as a protected party of the DVPO. In its judgment, the trial court observed that a court can issue a DVPO to protect a minor child but recognized that court's authority is limited to temporary measures which do not conflict with or modify existing custody orders issued by juvenile court. The trial court also noted there is an active custody and visitation order in juvenile court concerning the child. Furthermore, the trial court found that based on very little testimony presented regarding DV or menacing by stalking

9.

occurrences involving the child and the fact of S.L.'s incarceration, there was not an immediate and present danger to the child under R.C. 3113.31.

{¶ 26} We find the case relied upon by S.D. is not binding authority, nor is the *M.A.M.* case, although we do find *M.A.M.* persuasive. The circumstances in *M.A.M.* are akin to those in the present case and the analysis in *M.A.M.* is instructive in determining whether the trial court (not the juvenile court) appropriately declined to include the child in the DVPO issued to S.D. when a custody/visitation order exists in juvenile court regarding the child.

{¶ 27} Upon review of the record, the caselaw relied upon by S.D. and the trial court, and the applicable law, we find the trial court did not abuse its discretion when it ordered that only S.D. should be covered by the DVPO given the scant testimony of DV or menacing by stalking linked to the child and S.L.'s imprisonment at the time the trial court rendered its decision. We further note, there is competent, credible evidence in the record to support the trial court's decision to not include the child as a protected party of the DVPO. As such, we cannot say the trial court's decision was unreasonable, arbitrary, or unconscionable.

{¶ 28} Accordingly, we find S.D.'s sole assignment of error not well-taken.

10.

## Conclusion

{¶ 29} The judgment of the Wood County Common Pleas Court is affirmed.

Pursuant to App.R. 24, S.D. is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.

Thomas J. Osowik, P.J.

_____
JUDGE

Myron C. Duhart, J.

_____
Charles E. Sulek, J.                                JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.