[Cite as *Henson v. Robinson*, 2026-Ohio-70.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| STEPHANIE LEE HENSON, et al., | : | |
| | | CASE NOS. CA2025-05-045 |
| Appellees, | : | CA2025-05-046 |
| | | |
| vs. | : | OPINION AND |
| | | JUDGMENT ENTRY |
| WILLIAM HENRY ROBINSON IV, | : | 1/12/2026 |
| | | |
| Appellant. | : | |
| | | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case Nos. DV24090659 AND DV24100740

Schiavone Law Firm, LLC, and Frank J. Schiavone IV and James N. Rost, for appellees.

Suhre & Associates, LLC, and Joseph B. Suhre IV, for appellant.

**O P I N I O N**

**SIEBERT, J.**

{¶ 1}   William Henry Robinson, IV ("Father") appeals the decisions of the Butler

County Court of Common Pleas, Domestic Relation Division, (1) granting a domestic

violence civil protection order ("DVCPO") in favor of Stephanie Lee Henson ("Mother") which, among other things, prohibited Father from having any contact with their shared children, John and Jane,[1] for five years (or until Father sought reinstatement of parenting time) and (2) denying a DVCPO in favor of Father against Matteu Henson, Mother's husband ("Stepfather").

{¶ 2} Father asserts the trial court erred in two ways: (1) by issuing the DVCPO against him because there was no evidence to support his and Mother's children were abused or endangered by his conduct and that the five-year duration of the DVCPO constituted an abuse of discretion; and (2) by denying his petition for a DVCPO against Stepfather because there was sufficient evidence of Stepfather's alleged abuse against the children. Upon review, we conclude the magistrate erred in issuing a DVCPO (of any duration) against Father because it did not make any finding of harm or injury as required by Ohio law, and the evidentiary record does not support such a finding. However, the magistrate did not abuse its discretion in denying Father's petition for a DVCPO against Stepfather. We find no error in the magistrate's conclusion that the testimony of John and Father regarding Stepfather's purported actions was not credible.

**Factual and Procedural Background**

{¶ 3} As noted by the magistrate in its decision granting Mother's DVCPO, the procedural history of this case is "complex and convoluted" by virtue of the parties filing various actions against each other in multiple Ohio counties. We will summarize only those facts necessary to address the issues on appeal.

{¶ 4} Mother and Father were divorced in 2019. Those proceedings took place in

---

1. "John" and "Jane" are a pseudonyms adopted for this opinion for the purposes of privacy and readability. *See State v. Cansler*, 2025-Ohio-2558, ¶ 1, fn. 1 (12th Dist.), *Supreme Court of Ohio Writing Manual* 115 (3rd Ed. 2024).

Butler County and resulted in Mother being named as John and Jane's residential parent. In February of 2024, Father filed a motion in Butler County to be named custodian and residential parent of the children. Father subsequently filed multiple petitions for a DVCPO against Mother and Stepfather in Warren County that were later withdrawn.[2] However, in August of 2024, Father filed another petition for a DVCPO in Warren County after John reported to Father that Stepfather abused John on two separate occasions. The Warren County court granted a temporary protection order without a hearing[3] which prohibited Mother and Stepfather from seeing the children.

{¶ 5}  A few days later, the Butler County Domestic Relations Court suspended Father's parenting time, noting that Father "continue[d] to go to Warren County to seek other orders to circumvent this Court's orders." Father subsequently dismissed his motion to be named custodian of the children, and, despite the court's order suspending his parenting time, Father kept the children at his parents, refused to release the children to their maternal grandmother, and prevented the children from attending school for approximately two weeks. In response, Mother filed a petition for a DVCPO in Butler County and alleged Father gave the children access to weapons and "weaponize[ed] law enforcement and child services against her." The court granted a temporary protection order without a hearing.

{¶ 6}  Father's DVCPO petitions in Warren County were eventually transferred to the Butler County Domestic Relations Court, which held a hearing in November of 2024.

---

2. Mother and Stepfather lived in Warren County during the times relevant to Father's petitions there.

3. Orders granted without a hearing are "ex parte," is a Latin phrase and legal term of art referring to something "done . . . for the benefit of one party only, and without notice to" the opposing party. EX PARTE, Black's Law Dictionary (12th ed. 2024). This court finds it important that everyone reading its opinions can understand them, so it generally avoids the use of Latin phrases, especially when they impact a substantive or critical question before the court.

John testified at the hearing that on two occasions in August of 2024, Stepfather grabbed John by the neck and berated John or forced him into his room. However, John acknowledged multiple times that his testimony concerning the timeline of events did not make sense or line up with other acknowledged facts.

{¶ 7} In her July of 2024 report (approximately one month before the August of 2024 incidents John reported to Father), the children's guardian ad litem stated she was "extremely concerned about the extent of coaching and inclusion of the children, particularly [John]," in the parents' legal disputes. The guardian ad litem also "believe[d] that Stepfather was yelling to a point that it made the children uncomfortable" but that after taking anger management classes the children "reported that he does not yell anymore." She concluded that both Mother and Father's actions towards each other were fueled by mutual animosity.

{¶ 8} After the hearing, the magistrate granted Mother's DVCPO petition. After outlining the relevant law and detailing Father's conduct—both discussed in further depth below—the magistrate concluded that he:

> continuously exposed the children to confrontations that involve law enforcement, openly discussed court with the children including allowing them to read court documents, coached the children to lie, kept the children out of school for an extended period of time, disregarded court orders, engaged in forum shopping, filed multiple DV CPOs against Mother knowing that there was no basis for the Petitions, attempted to tamper with the children's testimony through letters from "family," exposed the children to dangerous weapons, and encouraged [John's] threats to commit violent acts [against Stepfather].

{¶ 9} The magistrate also found neither Father nor John's testimony credible.

{¶ 10} The magistrate acknowledged that a "domestic violence proceeding is not a substitute for a parenting proceeding" and Mother's case must "be resolved under the

specific legal standard and definitions established by R.C. 3113.31, not the broader best interest of the child standard of a R.C. 3109.04 or 3109.051 parenting proceeding." Despite this acknowledgment of the applicable law, the magistrate asserted, "there does not appear to be any other options" and concluded the issuance of a DVCPO against Father would prevent him from keeping the children from Mother against court orders and provide Mother and the children "some additional level of protection." The magistrate concluded Father's conduct "constitute[d] domestic violence as defined in R.C. 3113.31(A)(1)" and granted the DVCPO which prohibited Father from, among other things, contacting the children. The stated term of the order was five years, but Father could seek to reinstate parenting time in Mother and Father's divorce case.

{¶ 11} In a separate decision, the magistrate denied Father's DVCPO petition as to Stepfather. That decision also leaned on the conclusion that John's testimony was not credible. However, the magistrate stated that even if John's accounting events were to be believed, Stepfather's actions did not rise to the level of domestic violence.

{¶ 12} Father filed objections to the magistrate's decisions, but the trial court overruled them and affirmed the magistrate's decisions.

{¶ 13} This appeal followed.

**First Assignment of Error – Were the Children "Endangered" or "Abused" Under DVCPO Laws?**

Applicable Law

{¶ 14} As relevant in this appeal, and as the trial court acknowledged, Mother had the burden to show, by the preponderance of the evidence, that the children were in danger of Father committing domestic violence against them. *See Felton v. Felton*, 79 Ohio St.3d 34 (1997). The only applicable "domestic violence" at issue in Mother's allegations would be if Father "commit[ed] any act with respect to a child that would result

in the child being an abused child [as statutorily defined.]" R.C. 3113.31(A)(1)(iii). The trial court analyzed only two statutory definitions of an "abused child" as applicable to Father. First, a child is an abused child when he or she . . . "[i]s endangered as [statutorily defined]." R.C. 2151.031(C). The trial court cited the only applicable statutory definition of "endangering" as the parent of a child creating "a substantial risk to the health and safety of the child by violating a duty of care, protection, or support." R.C. 2919.22(A).

{¶ 15} Second, a child is defined as "abused" if that child "suffers physical or mental injury [due to the acts of the child's parents] that harms or threatens to harm the child's health or welfare." R.C. 2151.031(E). The parties' briefing both focus on whether mental injury occurred. "Mental injury," is defined as "any behavioral, cognitive, emotional, or mental disorder in a child caused by an act or omission . . . committed by the parent or other person responsible for the child's care." R.C. 2151.011(B)(24).

{¶ 16} Importantly, domestic violence proceedings are not a substitute for child custody proceedings, with the former permitting courts to "temporarily provide for the care of minor children" while the latter establish more permanent parental custody rights and responsibilities. *Couch v. Harrison*, 2001-Ohio-4199, at *7 (12th Dist.), citing R.C. 3113.31(E)(1)(d). *See also McCue v. Marlin*, 2010-Ohio-1298, ¶ 26 (7th Dist.).

<u>Standard of Review</u>

{¶ 17} The Ohio Supreme Court has held that to obtain a DVCPO, "the petitioner must prove by a preponderance of the evidence that the respondent has engaged in an act of domestic violence against petitioner, petitioner's family, or petitioner's household members." *McBride v. McBride*, 2012-Ohio-2146, ¶ 12 (12th Dist.), citing *Felton v. Felton*, 79 Ohio St.3d 34, paragraph two of the syllabus. We have previously defined "preponderance of the evidence" to mean, "the greater weight of the evidence, or

evidence that leads the trier of fact to find that the existence of the contested fact is more probable than its nonexistence." *McGrady v. Muench*, 2019-Ohio-2677, ¶ 12 (12th Dist.).

{¶ 18} "[A] dispute regarding whether a protection order should have been granted at all will be reviewed as to whether the issuance was against the manifest weight of the evidence." *McBride* at ¶ 10. A manifest weight of the evidence determination must examine "'the inclination of the greater amount of credible evidence . . . to support one side of the issue rather than the other.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, (1997), quoting *Black's Law Dictionary* (6th Ed.1990). However, "when reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct" as it directly observed witness testimony and the presentation of evidence. *State v. Wilson*, 2007-Ohio-2202, ¶ 24. Stated differently, appellate courts "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice" that it must be reversed on appeal. *State v. Wilks*, 2018-Ohio-1562, ¶ 168; *see also Halcomb v. Greenwood*, 2019-Ohio-194, ¶ 36 (12th Dist.).

Analysis

*"Abused Children"*

{¶ 19} As the parties acknowledge, the crux of the issue in this case is whether Mother met her burden to show by the preponderance of evidence that Father's conduct resulted in Jane and John being "abused children" as defined by statute. Mother made no allegations that Father committed an action which caused physical harm or injury to John or Jane. Father asserts the record shows no evidence the children were "endangered" or that they were "abused" because they suffered from "mental injury" as a

result of his actions. Mother, in turn, argues the magistrate's decision thoroughly outlined Father's offending conduct and that "the transcripts reflect that Father has negatively impacted [the children] through his encouragement that they make false statements, which have deprived both children of their parents." We review the trial court's decision for findings (or in this case, lack thereof) that Father endangered or abused the children.

{¶ 20} "Endangered" first. The magistrate acknowledged that endangerment in this context is "concerned with circumstances of neglect" and "characterized by acts of omission rather than commission." *State v. Kamel*, 12 Ohio St.3d 306, 309 (1984); *see also Ferris v. Ferris*, 2006-Ohio-878, ¶ 28 (12th Dist.) (holding "placing children in an environment where there is substantial risk to their health and safety constitutes one form of domestic violence.").

{¶ 21} The magistrate made no specific finding that Father endangered or neglected either child. Instead, the magistrate focused on (1) Father's refusal to comply with an order suspending his parenting time, (2) Father keeping the children from school for ten days, and (3) the Mason Police Department's lack of "action to try to enforce the order." The magistrate also compared Father's actions to a mother's severely abusive actions in another case from one of our sister districts. *See Rielinger v. Rielinger*, 2009-Ohio-1236 (8th Dist.). In *Reilinger,* the mother absconded with her children, leaving the father and paternal grandmother unaware of the children's whereabouts for two months. *See generally, id*. The mother also physically assaulted oldest child, committed verbal abuse, failed to timely send or keep the children in school over 30 times, interfered with counseling, and left them dirty and unkempt. *Id.*

{¶ 22} Comparison of the factual circumstances in *Rielinger* to those of this case is strained, at best. The record shows that while Father did keep the children home from

school during this time, he communicated with the school regarding the situation, he never left the area with the children, and Mother knew where the children were located. More importantly, however, we find it dispositive that the magistrate did not find Father "endangered" the children as statutorily defined. Even if the magistrate had sought to do so, this court's review of the record shows no evidence that Father endangered the children by neglect or by placing their health and safety at substantial risk.

{¶ 23} Certainly, Father did not exhibit stellar parenting, and the record supports the magistrate's frustration with Father's apparent obstinance, manipulation of the system, and his coaching of John to support his DVCPO against Stepfather. This court does not seek to justify or excuse Father's disrespectful actions. But none of the evidence in the record shows Father inexcusably failed to perform his duty of care toward John or Jane in a way that created a "substantial risk" to John or Jane's health or safety under to R.C. 2151.031(C).

{¶ 24} "Abused" next. Despite identifying the relevant statutes and standards for evaluating whether a child is "abused," the magistrate again made no findings that abuse in the form of physical or mental injury occurred. Nothing would have supported such a finding anyway. The record does not demonstrate that either child suffered "any behavioral, cognitive, emotional, or mental disorder" caused by an act or omission of Father. R.C. 2151.011(B)(24). By all appearances, Father's conduct was egregious. But regardless of whether Father's conduct "negatively impacted" the children, that does not, in and of itself, demonstrate the children are "abused" under Ohio law.

*Purpose of DVCPOs*

{¶ 25} The magistrate's decision, which was wholly adopted by the trial court, stated "[a]lthough this jurist greatly disfavors DVCPOs to dictate parenting orders, in this

case there does not appear to be any other options." The magistrate concluded the issuance of a DVCPO against Father would prevent him from keeping the children from Mother against court orders and provide Mother and the children "some additional level of protection." But the jurists involved should not just "greatly disfavor[ ]" granting DVCPOs to dictate compliance with parenting orders—they should wholly refrain from doing so because the relevant law simply does not permit it.

{¶ 26} Further, the magistrate expressed frustration "[b]oth Father and the Mason Police Department completely disregarded the orders made under the DR case. What is even more concerning is that they continued to disregard the orders even when they were incorporated into the DV CPO case."[4] Of course, this court understands the trial court's consternation at Father and another jurisdiction's apparent disregard for its orders. But such irritation is completely divorced from proper consideration of the law relevant to a DVCPO based on a *parent's* abuse. There are other avenues, supported under Ohio law, to deal with such infractions.

{¶ 27} Finally, despite the order's stated five-year term, Father could still seek to reinstate parenting time with the children in the context of the parties' divorce case. This ability further demonstrates the trial court's legal error—disregarding the statutory requirement to find Father *actually committed* domestic violence by endangering or abusing the children before issuing a DVCPO against Father.

{¶ 28} The trial court erred as a matter of law when it issued the DVCPO against Father without evidentiary support that he committed domestic violence against the

---

4. This court notes that Stepfather and Mother lived in Warren County when the alleged abuse occurred. On its face (without considering potential ulterior motives), Father's decision to call the police with jurisdiction in Warren County under such circumstances makes sense. In addition, we note, without deciding, that Father raised a procedural argument as to why his refusal to give the children to the maternal grandmother did not necessarily defy a court order that was still in effect.

children. This error caused a manifest miscarriage of justice by prohibiting Father to contact his children for five years. We sustain Father's first assignment of error.

**Second Assignment of Error – The Duration of the DVCPO**

{¶ 29} Next, Father argues the imposition of a five-year DVCPO constituted an abuse of discretion. Because we found the magistrate issued the DVCPO in error, we find this assignment of error moot.

**Third Assignment of Error – Denial of Father's DVCPO Petition as to Stepfather**

{¶ 30} Finally, Father argues the magistrate erred in denying his petition for a DVCPO against Stepfather. In summary, he argues that he demonstrated by a preponderance of the evidence that Stepfather committed domestic violence against John by "[p]lacing [John] by the threat of force in fear of imminent serious physical harm . . ." during the alleged events of August of 2024. R.C. 3113.31(A)(1)(ii). Father asserts the magistrate's conclusion John's testimony was not credible was in error because John repeatedly and consistently recounted Stepfather's alleged abuse to him, law enforcement, and other government and court officials.[5]

{¶ 31} Put simply, Father's arguments give us no reason to question the magistrate's credibility determination. While John's recounting may have been consistent, that does not make it credible. The record shows the trial court meticulously detailed the inconsistencies in John's testimony, observed behavioral cues, and weighed the motives of both Father and John before concluding they were not credible. John's guardian ad

---

5. Father also claims—without any elaboration—that John's testimony is corroborated by findings by children services investigations, medical documentation, and the filing of criminal charges against Stepfather for domestic violence. "It is not an appellate court's duty to 'root out' or develop an argument that can support an assignment of error, even if one exists." *Rathert v. Kempker*, 2011-Ohio-1873, ¶ 12 (12th Dist.), quoting *Hausser & Taylor, LLP v. Accelerated Systems Integration, Inc.*, 2005-Ohio-1017, ¶ 10 (8th Dist.).

litem shared the magistrate's concern that Father frequently influenced and "coached" John's statements to those involved in Mother and Father's legal battles. Moreover, the magistrate determined that even if John's accounting of events was true, Stepfather's actions did not rise to the level of domestic violence.

{¶ 32} We overrule this assignment of error.

**Conclusion**

{¶ 33} This court understands the trial court's frustration with the adults in this case and its apparent desire to remedy the situation at hand. But it cannot do so outside of the boundaries of Ohio law. Issuing a five-year DVCPO which prohibited Father's contact with his children without evidentiary support that he committed domestic violence towards them cannot be a solution to the contentious parenting time disputes at issue here.

{¶ 34} We sincerely hope that Father, Mother, and Stepfather put aside their anger at one another and do what is right by the most important people involved—their children. Father and Mother likely both feel justified in taking whatever actions they have. But weaponizing the children or the court system against one another serves no one. If for no other reason than for the sake of their long-term relationship with John and Jane, Father and Mother must adjust their attitude and behavior toward one another. They have the power to change everyone's future for the better, and this court hopes they find the courage and resolve to do so.

{¶ 35} Judgment and issuance of DVCPO in case no. DV24090659 is reversed and vacated. Judgment and denial of DVCPO in case no. DV24100740 affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgments or final orders appealed from be, and the same hereby are, reversed and vacated in Case No. DV24090659, and affirmed in Case No. DV24100740.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas, Domestic Relations Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed to appellee in CA 2025-05-045.

Costs to be taxed to appellant in CA 2025-05-046.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Mike Powell, Judge

/s/ Melena S. Siebert, Judge

- 13 -